Simon J. Frankel, State Bar No. 171552
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email:  sfrankel@cov.com

Aaron M. Herzig (pro hac vice pending)
TAFT STETTINIUS & HOLLISTER LLP
aherzig@taftlaw.com
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone:  (513) 381-2838

Attorneys for *Plaintiff Zoological Society of Cincinnati*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| ZOOLOGICAL SOCIETY OF CINCINNATI, D/B/A/ CINCINNATI ZOO & BOTANICAL GARDEN, an Ohio non-profit Corporation<br><br>Plaintiff,<br><br>v.<br><br>THE GORILLA FOUNDATION, a California Corporation; and FRANCINE PATTERSON, an individual<br><br>Defendants. | Civil Case No.: |

**VERIFIED COMPLAINT**

Plaintiff Zoological Society of Cincinnati, d/b/a Cincinnati Zoo & Botanical Garden ("Plaintiff" or "CZBG"), by and through its undersigned attorneys, alleges its Verified Complaint against the Gorilla Foundation ("TGF") and Francine Patterson ("Patterson," and, together with TGF, "Defendants") as follows:

**NATURE OF THE ACTION**

1. Western lowland gorillas are critically endangered animals native to central Africa. They are social animals that live in multigenerational groups and should not live isolated from other gorillas. TGF, which is not accredited by the Association of Zoos and Aquariums ("AZA"), was home to a western lowland gorilla named Koko. In 1991 at TGF's request, for the health and well-being of Koko, CZBG agreed to loan it a western lowland gorilla, Ndume, under a loan agreement between CZBG and TGF. The loan agreement, which was updated and clarified in 2015, provided that upon Koko's death Ndume would be transferred to an AZA-accredited institution identified by the Gorilla Species Survival Plan® ("GSSP"), a group of scientists, veterinarians, and experts that oversees the health and welfare of the gorilla population at zoos in North America, and by CZBG. The agreement stated plainly and unequivocally: "Upon the death of 'Koko', 'Ndume' will be placed at an AZA institution recommended by [GSSP] and [CZBG]."

2. Koko died in June 2018. Ndume now lives alone for the first time in his life. Following the death of Koko, GSSP determined that the best location for Ndume (for him and for the endangered species of gorillas) is CZBG. CZBG contacted TGF to begin the process of transferring Ndume to CZBG. TGF has prevented the transfer and has stated that it does not intend to live up to its contractual obligations. TGF has breached the loan agreement and is keeping Ndume in violation of the law and to the detriment of Ndume's health.

3. CZBG is the entity legally responsible for Ndume, which includes ensuring that he receives proper care based on industry best practices and laws governing primates in human care, consistent with the AZA's accreditation standards. Thus, as a consequence of Defendants' wrongful conduct in refusing to honor the agreement designed to ensure CZBG meets its responsibilities, CZBG is both deprived of possession of Ndume and its accreditation status is directly implicated, which, in turn, risks compromising CZBG's ability to carry out its mission and operation as a premier zoological park dedicated to the conservation, education, and preservation of wild animals and wild spaces.

4. CZBG is entitled to specific performance requiring Defendants to stop breaching the parties' contract and to transfer possession of Ndume to CZBG, including cooperating in all steps necessary to safely and effectively prepare Ndume for his transport to CZBG's facility. In the

alternative, CZBG is entitled to an order granting the same relief because Defendants are unlawfully possessing Ndume.

**PARTIES**

5. CZBG is a non-profit corporation formed under the laws of the state of Ohio, with its principal place of business located at 3400 Vine Street, Cincinnati, Ohio 45220. CZBG is a citizen of Ohio. CZBG is an accredited member of the AZA.

6. TGF is an organization with its principal place of business at 1733 Woodside Rd. #330, Redwood City, California 94061. TGF is a citizen of California. TGF is not accredited by the AZA and is not eligible for Sustainability Partner status within the AZA.

7. Patterson is an individual who co-founded TGF and presently serves as its President, CEO, and Director of Research. Patterson resides in Woodside, California, and is a citizen of California.

8. The AZA is a 501(c)(3) non-profit organization representing over 230 accredited zoological parks and aquariums and certified related facilities in the United States and abroad. It is the independent accrediting organization for those institutions. The AZA accreditation process is thorough, including the submission of an extensive application and an intensive, on-site inspection by a team of experts to ensure the highest standards of animal care and management are met. Fewer than ten (10) percent of wildlife exhibitors licensed by the United States Department of Agriculture under the Animal Welfare Act meet the standards for AZA accreditation. Accreditation must be renewed every five (5) years.

9. GSSP is one of nearly 500 Species Survival Plan ("SSP") Programs administered by the AZA. SSP Programs are led by expert advisors with a focus on the conservation of select and typically threatened or endangered species through the cooperative management of small populations at AZA-accredited zoos and aquariums and certified related facilities. SSP Programs coordinate the individual activities of participating member institutions through a variety of species conservation, research, husbandry, management, and educational initiatives. Organizations can obtain Sustainability Partner status – which is not considered accreditation or certification – if certain eligibility criteria are met, including that the organization regularly exchanges animals with AZA-accredited facilities, typically as part of a breeding and transfer plan or other SSP Program management process. Approvals for a

Sustainability Partner's continued participation in an SSP Program must be renewed every five (5) years.

## JURISDICTION

10. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship between the parties exists, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

## VENUE

11. Venue is proper herein pursuant to 28 U.S.C. § 1391(b) and (c), in that a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District, Patterson resides in this District, and TGF resides in and is doing business in this District.

## INTRADISTRICT ASSIGNMENT

12. A substantial part of the events or omissions giving rise to Plaintiff's claims occurred within San Mateo County. Accordingly, this case is appropriately assigned to the San Francisco division of this Court pursuant to Civil Local Rule 3-2, subsections (c) and (d).

## FACTUAL BACKGROUND

**The Cincinnati Zoo and Ndume**

13. CZBG operates an AZA-accredited zoological park internationally known for its success in the protection and propagation of endangered animals and plants. CZBG has been caring for gorillas since 1931, and is currently responsible for the care and survival of ten (10) western lowland gorillas housed on its premises, including several relatives of Ndume. CZBG recently renovated and expanded its dedicated gorilla facility.

14. Ndume, a male western lowland gorilla, *Gorilla gorilla gorilla*, Studbook #776, was born at CZBG on October 10, 1981. Ndume was originally housed at CZBG, where – as well-documented scientific research shows is necessary for his species – he regularly interacted with other gorillas in a social setting. Upon the recommendation of GSSP, in 1988 Ndume was transferred to the Brookfield Zoo, an AZA-accredited institution in Brookfield, Illinois. While at Brookfield Zoo, Ndume sired multiple offspring and thrived as a member of that zoo's gorilla population. In August 1991, Ndume was moved back to CZBG with the approval of GSSP.

15. Possession of Ndume, both inherently and for an AZA-accredited institution like CZBG, as well as a matter of the expense involved in providing appropriate care for a gorilla, has a value substantially exceeding applicable amount in controversy requirements.

**TGF and Koko**

16. TGF operates a non-accredited, self-described "gorilla sanctuary." Over the course of its history, TGF has had custody of three western lowland gorillas: Koko (deceased June 2018) and two male gorillas, each originally intended to serve as a mate for Koko: Michael (deceased April 2000) and Ndume (current age 37).

17. Patterson is the president and CEO of TGF, responsible for all major decisions affecting TGF including its cooperation (and lack of cooperation) with CZBG, GSSP, and AZA in the transfer of Ndume to and from its facilities.

**CZBG Loans Ndume to TGF**

18. CZBG and TGF entered into a loan agreement dated as of October 21, 1998 (the "First Loan Agreement"), pursuant to which CZBG agreed to loan Ndume to TGF, where Ndume would reside under TGF's immediate care. A copy of the First Loan Agreement is attached as Exhibit A.

19. Paragraph 1 of the First Loan Agreement provides that CZBG "has loaned [Ndume] to [TGF] … for the sole purpose of propagation" and Paragraph 5 provides that TGF would "attempt to breed [Ndume]." TGF never bred Ndume with Koko.

20. In 2013, CZBG requested that TGF provide a comprehensive report updating CZBG on Ndume. Among other points, the report noted that Ndume was not living in the same enclosure as Koko, but rather in a solitary enclosure with only visual and auditory access to Koko.

21. Based on this report – and primarily the fact that Ndume was not physically living with Koko – GSSP recommended transferring Ndume to CZBG. TGF was told of this recommendation.

22. During a 2014 visit to TGF, CZBG and GSSP professionals determined that, although not compliant with AZA standards, Ndume's care and facilities at TGF were currently acceptable and that despite Ndume and Koko's physical separation, the two could hear, smell, and see another gorilla, a foundational natural history need for this species. Based on these two findings, GSSP and CZGB determined that Koko should not be left in total isolation from other gorillas and began working with

TGF on a new plan to defer Ndume's transfer while Koko was alive.

23. In January 2015, the AZA and GSSP categorized Ndume as temporarily non-essential to the gorilla population until a time when CZBG and GSSP deemed it appropriate to move Ndume from TGF. This special permission permitted TGF to temporarily continue its custody of Ndume at its facility for purposes of companionship with Koko, but with the ultimate supervision and responsibility for Ndume remaining with CZBG.

24. As a condition to that special permission, CZBG and TGF entered into a loan agreement dated December 31, 2015 (the "Agreement") that "supersedes and makes null and void any previous agreement in place for 'Ndume,'" and pursuant to which CZBG continued loaning Ndume to TGF on the terms set forth. A copy of the Agreement – executed by both parties – is attached as Exhibit B.

25. The prefatory language to the Agreement provides:

> Because TGF is not accredited by AZA and is not eligible for Sustainability Partner status within the AZA, CZBG and [GSSP] are obligated to consider relocating "Ndume". . . . Despite the onus to relocate "Ndume" to an AZA accredited facility, the GSSP and CZBG are sensitive to the fact that there is some level of psychological connection between "Ndume" and 0.1 gorilla "Koko", owned by TGF. . . . This special permission [granted by AZA and GSSP] is based on TGF's continued strong collaboration with CZBG and GSSP to ensure the proper care of "Ndume" and is contingent on the following Animal Loan Agreement terms.

26. Paragraph 1 of the Agreement provides:

> [CZBG] has loaned to [TGF] [Ndume] as a companion to the female gorilla "Koko."  [TGF] will not attempt to produce offspring with "Ndume." [TGF] will not house "Ndume" with any gorilla other than "Koko" without prior written permission from [CZBG.]  ***Upon the death of "Koko", "Ndume" will be placed at an AZA institution recommended by [GSSP] and [CZBG]."***  (Emphasis added.)

27. Paragraph 10 provides that CZBG "will be permitted to do biannual site visits to review the condition of 'Ndume' and discuss his status with [TGF] staff." CZBG visited TGF in January of 2016, but has not been permitted to visit to facilitate Ndume's transfer preparations after Koko's death.

**The parties commence preparation to transfer Ndume back to CZBG**

28. On June 19, 2018, Koko died.

29. Following Koko's passing, on or about July 31, 2018, Defendants received notice that it would be necessary to begin planning the transfer of Ndume to an AZA-accredited institution, and that TGF would be further notified once a selection was made.

30. Thereafter, by letter dated August 16, 2018, GSSP delivered notice to Defendants:

> the time has come for us to move Ndume back into a zoo accredited by the [AZA], as per the signed loan agreement between TGF and [CZBG]. . . . As such, the [GSSP] and, by extension, AZA, recommends that Ndume be transferred to CZBG as soon as possible.

The letter continued that "CZBG currently provides the best opportunity for Ndume to . . . begin the socialization process with other gorillas." A copy of the letter is attached as Exhibit C (the "GSSP Recommendation").

31. On or about August 29, 2018, representatives of CZBG, GSSP, and TGF, including Patterson, conducted a conference call during which they discussed steps toward planning Ndume's transfer. On the call, Gary Stanley, COO of TGF, directed Christa Nunes, Associate Director of Gorilla Research and Care at TGF, to begin transfer preparations with CZBG.

32. Cooperative preparations between CZBG and TGF began promptly and continued into September with a target transfer period of the first week of November 2018.

**Defendant ceases cooperation and refuses transfer**

33. In September, TGF sent a letter to its followers and donors stating that it intended to keep Ndume and acquire female gorillas to live with him, in direct contravention of the Agreement and the GSSP Recommendation. TGF solicited donations for that cause. A copy of that letter is attached as Exhibit D.

34. TGF's cooperation (such as it was) ended when it refused to allow personnel under CZBG's direction to visit TGF in order to formulate plans for installation of a shipping crate at Ndume's enclosure. Acclimating a gorilla to the crate in which it will be transported ("crate training") is an important step in the process of making a transfer as safe and comfortable as possible for the gorilla. A conference call between CZBG and TGF was held to discuss the issue, but the request for the visit was still denied. CZBG then requested that TGF provide CZBG with a clear account of its intentions with regard to the transfer of Ndume.

35. By letter dated September 18, 2018, Patterson informed CZBG and GSSP of TGF's "disagreement with the … recommendation by the Gorilla SSP to relocate Ndume to the Cincinnati Zoo" and that "no other obvious options remain" besides "chang[ing] direction," meaning not transferring Ndume to CZBG and instead "transfer[ing] one or two other gorillas" to TGF to "live a new, stress-free life, with Ndume."

36. Making no mention of the Agreement or TGF's duty under it to transfer Ndume, the letter instead claimed that TGF's sole concern was its "belie[f that] the transfer is not in the best interest of Ndume," which "should control what we do." It then outlined several unsupported, and in some instances outright false, bases for this purported belief, including Ndume's age (Ndume's potential life expectancy is at least another 10 years), his "unique temperament," and the lack of "precedent for transferring a gorilla to a zoo from a sanctuary environment." In fact, gorillas are regularly transferred among zoos under the direction of GSSP to promote genetic diversity and improve the overall health of the gorilla population. There is no scientific basis for TGF's claim that Ndume is at any increased risk. And TGF offers no explanation for why it agreed to the transfer in the Agreement if it believed such a transfer was harmful.

37. The letter further claimed that Ndume "overheard a discussion about his possible transfer to the zoo" and reacted by crying, screaming, and banging and shoving objects for 14 hours.

38. Patterson's letter dismissed the indisputable fact and alarming concern that Ndume is now living in total isolation from his species because, according to Patterson, she and other TGF personnel are "human great apes" and the concern is otherwise "insincere" since TGF – a non-zoo, non-accredited organization – was, in Patterson's words, "blocked" from adding more gorillas. A copy of the September 18, 2018 letter is attached as Exhibit E.

39. Notably, People for the Ethical Treatment of Animals ("PETA") disagrees with Patterson's views. PETA agrees that Ndume should be transferred to CZBG and that maintaining Ndume's isolation is detrimental to Ndume's health. *See* https://www.peta.org/media/news-releases/peta-celebrates-lone-gorillas-move/.

40. Shortly after its letter, on September 21, 2018, TGF made a post on its official Facebook page that indicated TGF was "doing our best to ensure that Ndume's senior years are as fulfilling as

possible," which post was soon modified to remove that statement. A screenshot of the original and modified posts are attached as Exhibit F.

41. CZBG, GSSP, and the AZA jointly responded to Patterson by letter dated September 24, 2018. The joint letter discussed the many fallacies and issues with Patterson's contract-breaching stance, including:

- CZBG is responsible for Ndume's health and well-being, and thus loaned Ndume to TGF under strict conditions to that end, including that "after Koko's death Ndume would be transferred to an institution designated by the AZA's GSSP. . . . This is not a new development. TGF has known about it for years and agreed to in writing."

- "[T]he AZA and SSP have recommended that Ndume be transferred back to CZBG to live with the gorilla population there, which is consistent with the loan agreement." "The recommendation . . . was based on a preponderance of support and expertise from CZBG/SSP/AZA professional gorilla care givers/managers/scientists/ vets thoroughly considering facts related to gorillas as a species and Ndume as an individual."

- Ndume's "transfer back to CZBG [from Brookfield Zoo] was not due to any gorilla social issues, problems with keeper staff or other stressors with guests at all. Throwing behavior in apes is an attention-grabbing behavior meant to elicit a positive reinforcement of some kind from the targeted person."

- Ndume was transferred to TGF "for no other reasons than that" the female gorillas then at CZBG were "related to him and in breeding situations" and TGF offered Ndume "social companionship with Koko and a little more space."

- Ndume has a positive longevity outlook considering his "long-lived relations, including his **father** Ramses who is currently still alive at age 47, 10 years older than Ndume, his aunt Samantha who is 48 and his aunt Gigi who is 46. Ndume's mother Rosie lived to be 45."

- "There have been 150 gorilla transfers since 2007 with no complications or transfer related deaths," including 11 "gorillas above the age of 35."

- "[B]est practices will be implemented with [Ndume's] transfer."

- "The far bigger concern for Ndume's well-being is his isolation from other gorillas, which [TGF and Patterson] are exacerbating to his detriment. Every day that goes by without immediate and full cooperation from TGF with CZBG/SSP/AZA on Ndume's transfer preparation plan is another that, ·

9
**VERIFIED COMPLAINT**

- Ndume is living in isolation away from other gorillas.

- Ndume is living in conditions not meeting CZBG/SSP/AZA's comprehensive and unparalleled standards and regulation.

- Ndume doesn't have access to CZBG's fulltime veterinary care staff.

- Ndume's short-term and long-term welfare are jeopardized.

- Ndume's psychological and subsequent physical wellbeing are compromised (as is evident by the concerning behavior account in your letter from September 18, 2018)."

The letter then invited Defendants "to pick right back up with the previous, cooperative action steps that had been initiated," and outlined each step in "[t]he plan . . . we had been working towards prior," and requested confirmation from Defendants by September 28, 2018. A copy of the September 24, 2018 letter is attached as Exhibit G.

42. By letter dated September 28, 2018, Defendants refused, again under the pretense of TGF's self-serving prognoses about Ndume's health and welfare to the exclusion of those made by numerous scientists, veterinarians, and professionals outside TGF, and – most fundamental here – the explicit contractual promise TGF bound itself to follow regarding Ndume's transfer. A copy of that letter is attached as Exhibit H.

43. On October 24, 2018, representatives of CZBG, GSSP, and TGF, including Patterson, conducted a conference call to discuss TGF's refusal to abide by the terms of the Agreement and unlawful possession of Ndume. During the call, CZBG informed Defendants that it would have to immediately file the instant lawsuit if Defendants persisted in their wrongful conduct. Defendants again refused to abide by the Agreement and refused to transfer Ndume to CZBG.

**CZBG is harmed by Defendant's refusal to transfer**

44. Western lowland gorillas require social interaction with other gorillas in order to be healthy.

45. TGF does not possess any gorillas besides Ndume, and does not have a reasonable prospect to imminently – and legally – obtain possession of another gorilla.

46. Accordingly, if Ndume is not immediately transferred from TGF to CZBG, he will

continue to live in isolation from other gorillas, and thus, in a sub-optimal, at-risk situation. As the institution legally responsible for Ndume's care and well-being, CZBG is harmed by TGF's conduct because TGF's sub-optimal care of Ndume implicates CZBG's AZA accreditation and deprives CZBG of its lawful interest in Ndume.

## CAUSES OF ACTION

### COUNT I

### Breach of Contract with Specific Performance (TGF)

47. Plaintiff repeats and realleges the allegations above as if fully set forth.

48. The Agreement is a valid and binding contract.

49. Plaintiff has performed its obligations under the Agreement.

50. Pursuant to the Agreement, "[u]pon the death of 'Koko', 'Ndume' will be placed at an AZA institution recommended by the Gorilla Species Survival Plan (SSP) and the Cincinnati Zoo & Botanical Garden."

51. TGF is not an AZA institution.

52. Koko died, and the GSSP Recommendation designated CZBG as the AZA institution with which Ndume be placed. CZBG joins in that recommendation.

53. Pursuant to the Agreement, TGF is therefore obligated to cooperate in the transfer of Ndume from its facility upon the death of Koko. But TGF has not cooperated and refuses to relinquish possession of Ndume, and is thus breaching the Agreement.

54. Plaintiff is currently being harmed, and will continue to be harmed, by TGF's refusing to comply with the Agreement and refusing to take all necessary steps to effect a safe and orderly transfer of Ndume to CZBG.

55. Plaintiff does not have an adequate remedy at law since the wrong committed was and continues to be TGF's retaining possession of Ndume in contravention of CZBG's right to receive possession of Ndume. Monetary damages for failure to transfer Ndume, an endangered western lowland gorilla, would be impossible to ascertain.

56. Specific performance of the Agreement is appropriate in this circumstance and TGF should be ordered to comply immediately with the transfer provision in the Agreement.

## COUNT II

### Replevin (TGF and Patterson)

57. Plaintiff repeats and realleges the allegations above as if fully set forth.

58. CZBG owns Ndume and never ceased to claim its interest in Ndume.

59. TGF only possessed Ndume pursuant to a contingent loan from CZBG. TGF is not, and was never, the owning institution of Ndume.

60. Pursuant to that loan, TGF agreed that upon the death of Koko, Ndume would be placed at an AZA institution recommended by GSSP and CZBG. TGF is not an AZA institution, and upon Koko's death the GSSP Recommendation designated CZBG as the AZA institution. CZBG joins in that recommendation. CZBG therefore has a right to possession of Ndume pursuant to the Agreement.

61. TGF never had any ownership right in Ndume, and at the moment of the GSSP Recommendation TGF no longer had any possessory right to Ndume as well. Furthermore, at that moment, TGF was obligated to cooperate in the transfer of Ndume from its facility to CZBG, the owning institution designated as having assumed TGF's possessory right to Ndume.

62. At all relevant times, Patterson knew that TGF did not have an ownership interest in Ndume, that CZBG has the sole ownership interest in Ndume, that TGF ceased having any temporary possessory interest in Ndume upon the GSSP Recommendation, and that TGF had a duty to cooperate in the transfer of Ndume to CZBG.

63. Patterson had an obligation to use her position and power at TGF to cause TGF to relinquish its possession of Ndume and cooperate in the transfer of Ndume to CZBG.

64. Patterson nevertheless used her position and power at TGF to cause TGF to refuse to cooperate in the transfer of Ndume to CZBG and to instead wrongfully retain possession of Ndume to the exclusion of CZBG's lawful interest.

65. TGF and Patterson have not cooperated and have thereby wrongfully seized and wrongfully hold Ndume.

66. TGF has the ability and power to deliver possession of Ndume to CZBG.

67. Plaintiff is currently being harmed, and will continue to be harmed, by TGF's refusing to take all necessary steps to effect a safe and orderly transfer of Ndume to CZBG.

68. It would be contrary to justice to allow TGF and Patteson to retain custody of Ndume.

69. TGF and Patterson should be ordered to return Ndume to CZBG.

## COUNT III

### Conversion (TGF and Patterson)

70. Plaintiff repeats and realleges the allegations above as if fully set forth.

71. CZBG owns Ndume and has the sole right to possess Ndume.

72. TGF has only possessed Ndume pursuant to a contingent loan from CZBG. TGF has never owned Ndume.

73. TGF agreed that upon the death of Koko, Ndume would be placed at an AZA institution recommended by the GSSP and CZBG. TGF is not an AZA institution, and upon Koko's death the GSSP Recommendation designated CZBG as the AZA institution. CZBG joins in that recommendation.

74. TGF never had any ownership right in Ndume, and at the moment of the GSSP Recommendation TGF no longer had any possessory right to Ndume as well. Furthermore, at that moment, TGF was obligated to cooperate in the transfer of Ndume from its facility to CZBG.

75. At all relevant times, Patterson knew that TGF did not have an ownership interest in Ndume, that CZBG has the sole ownership interest in Ndume, that TGF ceased having any temporary possessory interest in Ndume upon the GSSP Recommendation, and that TGF had a duty to cooperate in the transfer of Ndume to CZBG.

76. Patterson had an obligation to use her position and power at TGF to cause TGF to relinquish its possession of Ndume and cooperate in the transfer of Ndume to CZBG.

77. Patterson nevertheless used her position and power at TGF to cause TGF to refuse to cooperate in the transfer of Ndume to CZBG and to instead wrongfully retain possession of Ndume to the exclusion of CZBG's lawful interest.

78. TGF and Patterson have not cooperated and have refused to relinquish possession of Ndume to CZBG.

79. TGF and Patterson have thereby converted Ndume by wrongful act in direct violation of CZBG's rights.

80. Plaintiff is currently being harmed, and will continue to be harmed, by Defendants'

refusing to do what TGF contractually committed to do and take all necessary steps to effect a safe and orderly transfer of Ndume to CZBG.

81. It would be contrary to justice to allow TGF and Patterson to retain custody of Ndume.

82. TGF and Patterson should be ordered to return Ndume to CZBG.

**REQUEST FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Enforce TGF's obligations under the Agreement or, in the alternative, protect CZBG's ownership and possessory right in Ndume, by:

  a. ordering TGF to immediately transfer day-to-day control of Ndume to CZBG and its designees;

  b. ordering TGF to grant CZBG and its designees – including, but not limited to veterinary professionals and trained gorilla keepers – all reasonable access to TGF's facility in order to permit CZBG and its designees:

   i. to provide all necessary day-to-day care for Ndume, including, but not limited to, feeding, veterinary care, and cleaning; and

   ii. to prepare for, and ultimately execute, the transfer of Ndume from that facility to CZBG's facility in Cincinnati, Ohio.

2. Award Plaintiff the costs and expenses of this suit, including its reasonable attorneys' fees; and

3. Grant such other relief as the Court may deem just and proper.

DATED: October 25, 2018                     Respectfully submitted,

By:   /s/ *Simon J. Frankel*
         Simon J. Frankel
         Covington & Burling LLP
         One Front Street
         San Francisco, CA 94111
         (415) 591-6000
         sfrankel@cov.com

Aaron M. Herzig (*pro hac vice pending*)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 381-2838
aherzig@taftlaw.com

*Attorneys for Plaintiff Zoological Society of Cincinnati*

## VERIFICATION

I, David Jenike, declare:

I am Chief Operating Officer at the Zoological Society of Cincinnati, d/b/a Cincinnati Zoo & Botanical Gardens, the Plaintiff in this action, and I am authorized to make this verification on its behalf. I have read the foregoing Verified Complaint and know its contents. The facts contained therein are either true as of my own knowledge or true on the basis of my information and belief.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: Oct 24, 2018

_____
David Jenike