DAVID B. CASSELMAN (Bar No. 81657)
  dbc@casselmanlawgroup.com
DAVID POLINSKY (Bar No. 125163)
  dp@casselmanlawgroup.com
KIRK S. COMER (Bar No. 240847)
  ksc@casselmanlawgroup.com
CASSELMAN LAW GROUP
5567 Reseda Boulevard, Suite 330
Tarzana, California  91356
Telephone: (818) 609-2300
Facsimile:  (818) 345-0162

FRANK M. PITRE (Bar No. 100077)
  FPitre@cpmlegal.com
JULIE L. FIEBER (Bar No. 202857)
  JFieber@cpmlegal.com
COTCHETT PITRE & McCARTHY LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile:  (650) 697-0577

Attorneys for Defendant and
Counterclaimant The Gorilla Foundation
and Defendant Dr. Francine Patterson

*Left margin (vertical):* CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 9 1356

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

| | |
|---|---|
| ZOOLOGICAL SOCIETY OF CINCINNATI, D/B/A CINCINNATI ZOO & BOTANICAL GARDEN, an Ohio non-profit Corporation,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>THE GORILLA FOUNDATION, a California Corporation; and FRANCINE PATTERSON,<br><br>　　　　　Defendants. | CASE NO. 4:18-cv-06529 (KAW)<br><br>**ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF;**<br><br>**DEMAND FOR JURY TRIAL** |

1
2

## ANSWER OF DEFENDANTS

3

4       Defendants The Gorilla Foundation ("TGF") and Dr. Francine Patterson

5   ("Defendants") hereby respond to the Complaint of Plaintiff Zoological Society of
    Cincinnati, d/b/a Cincinnati Zoo & Botanical Garden ("CZBG") as follows:

6
7

## NATURE OF THE ACTION

8

9       1.      In response to Paragraph 1 of the Complaint, Defendants deny that all

10  gorillas in captivity are "native to central Africa," and that Ndume was loaned to

11  TGF solely "for the health and well-being of Koko."   Defendants admit the

12  remainder of the allegations contained therein.

13

14      2.      In response to Paragraph 2 of the Complaint, Defendants admit that

15  Koko died in June 2018, and that CZBG contacted TGF to begin the process of

16  transferring Ndume to CZBG.   Defendants deny the remainder of the allegations

17  contained therein.

18

19      3.      In response to Paragraph 3 of the Complaint, Defendants deny all

20  allegations contained therein.

21

22      4.      In response to Paragraph 4 of the Complaint, Defendants deny all

23  allegations contained therein.

24

25

## PARTIES

26

27      5.      In response to Paragraph 5 of the Complaint, Defendants admit the

28  allegations contained therein.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

6.     In response to Paragraph 6 of the Complaint, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegation that TGF is not eligible for Sustainability Partner status within the AZA, and therefore deny said allegation on that ground.  Defendants admit the remainder of the allegations contained therein.

7.     In response to Paragraph 7 of the Complaint, Defendants admit the allegations contained therein.

8.     In response to Paragraph 8 of the Complaint, Defendants admit the allegations contained therein.

9.     In response to Paragraph 9 of the Complaint, Defendants admit the allegations contained therein.

## JURISDICTION

10.     In response to Paragraph 10 of the Complaint, Defendants are without sufficient knowledge or information to form a belief as to the truth of the allegation that the amount in controversy exceeds the sum or value of $75,000, and therefore deny said allegation on that ground.

## VENUE

11.     In response to Paragraph 11 of the Complaint, Defendants admit the allegations contained therein.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

1
2

## INTRADISTRICT ASSIGNMENT

3       12.     In response to Paragraph 12 of the Complaint, Defendants admit the
4 allegations contained therein.

5

## FACTUAL BACKGROUND

6
7

8 **The Cincinnati Zoo and Ndume**

9

10      13.     In response to Paragraph 13 of the Complaint, Defendants are without
11 sufficient knowledge or information to form a belief as to the truth of the allegation
12 that CZBG "is currently responsible for the care and survival of ... several relatives
13 of Ndume," and therefore deny said allegation on that ground.  Defendants admit the
14 remainder of the allegations contained therein.

15

16      14.     In response to Paragraph 14 of the Complaint, Defendants deny the
17 allegation that Ndume "thrived as a member of that zoo's gorilla population."
18 Defendants admit the remainder of the allegations contained therein.

19

20      15.     In response to Paragraph 15 of the Complaint, Defendants are without
21 sufficient knowledge or information to form a belief as to the truth of the allegation
22 that "Possession of Ndume ... has a value substantially exceeding applicable
23 amount in controversy limits," and therefore deny said allegation on that ground.

24

25 **TGF and Koko**

26

27      16.     In response to Paragraph 16 of the Complaint, Defendants deny the
28 allegation and characterization of TGF as "a non-accredited, self-described gorilla

sanctuary.ö  Defendants admit the remainder of the allegations contained therein.

17.    In response to Paragraph 17 of the Complaint, Defendants deny the allegations contained therein.

**CZBG Loans Ndume to TGF**

18.    In response to Paragraph 18 of the Complaint, Defendants admit that TGF and CZBG entered into a loan agreement concerning Ndume, but deny that the agreement was executed on October 21, 1998.  Defendants admit that TGF and CZBG entered into the agreement attached as Exhibit A to the Complaint.

19.    In response to Paragraph 19 of the Complaint, Defendants deny the characterization and allegation that "TGF never bred Ndume with Koko." Defendants admit the remainder of the allegations contained therein.

20.    In response to Paragraph 20 of the Complaint, Defendants deny the allegations contained therein.

21.    In response to Paragraph 21 of the Complaint, Defendants are without sufficient knowledge or information to form a belief as to what prompted CZBG to act, and therefore deny said allegation on that ground.

22.    In response to Paragraph 22 of the Complaint, Defendants are without sufficient knowledge or information to form a belief as to what CZBG determined and what it based its decision to act upon, and therefore deny said allegation on that ground.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

23.    In response to Paragraph 23 of the Complaint, Defendants deny that CZBG had "ultimate supervision and responsibility" for Ndume.

24.    In response to Paragraph 24 of the Complaint, Defendants deny that the December 31, 2015 Agreement was conditional.  Defendants admit the remainder of the allegations contained therein.

25.    In response to Paragraph 25 of the Complaint, Defendants admit the allegations contained therein.

26.    In response to Paragraph 26 of the Complaint, Defendants admit the allegations contained therein.

27.    In response to Paragraph 27 of the Complaint, Defendants admit the allegations contained therein.

**The parties commence preparation to transfer Ndume back to CZBG**

28.    In response to Paragraph 28 of the Complaint, Defendants admit the allegations contained therein.

29.    In response to Paragraph 29 of the Complaint, Defendants admit the allegations contained therein.

30.    In response to Paragraph 30 of the Complaint, Defendants admit the allegations contained therein.

31.    In response to Paragraph 31 of the Complaint, Defendants admit that a

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 9 1356

1  conference call occurred discussing a potential transfer of Ndume, but Defendants

2  deny that Gary Stanley directed anyone to "begin transfer preparations."

3

4      32.    In response to Paragraph 32 of the Complaint, Defendants admit that

5  TGF attempted to cooperate, but did not agree to a target transfer period of the first

6  week of November 2018.

7

8  **Defendant ceases cooperation and refuses transfer**

9

10     33.    In response to Paragraph 33 of the Complaint, Defendants deny the

11  characterization of the content of the letter, and the allegation that the letter was "in

12  direct contravention of the Agreement." Defendants admit that a copy of its letter is

13  attached to the Complaint as Exhibit D.

14

15     34.    In response to Paragraph 34 of the Complaint, Defendants deny that it

16  "refused" any visits by CZBG or that it "ended" any cooperation. Defendants admit

17  the remaining allegation therein.

18

19     35.    In response to Paragraph 35 of the Complaint, Defendants deny that the

20  characterization of their September 18, 2018 letter is accurate, but admit to sending

21  CZBG said letter.

22

23     36.    In response to Paragraph 36 of the Complaint, Defendants deny that the

24  characterization of their September 18, 2018 letter is accurate, but admit to sending

25  CZBG said letter. Defendants deny the remaining allegations contained therein.

26

27     37.    In response to Paragraph 37 of the Complaint, Defendants admit the

28  allegations contained therein.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

38.     In response to Paragraph 38 of the Complaint, Defendants deny that the characterization of their September 18, 2018 letter is accurate, but admit to sending CZBG said letter and admit that a copy is attached to the Complaint as Exhibit E.

39.     In response to Paragraph 39 of the Complaint, Defendants admit the allegations contained therein.

40.     In response to Paragraph 40 of the Complaint, Defendants admit the allegations contained therein.

41.     In response to Paragraph 41 of the Complaint, Defendants admit that CZBG, GSSP and the AZA sent TGF the letter attached as Exhibit G to the Complaint, but deny the truth of the allegations set forth in the letter or that the letter showed any "fallacies" with TGF's position or the statements it made in its prior letter.

42.     In response to Paragraph 42 of the Complaint, Defendants deny that the characterization of their September 28, 2018 letter is accurate, but admit to sending CZBG said letter and admit that a copy is attached to the Complaint as Exhibit E.

43.     In response to Paragraph 43 of the Complaint, Defendants admit that the October 24, 2018 call occurred, but deny that the characterization of the call is accurate.

**CZBG is harmed by Defendant's refusal to transfer**

44.     In response to Paragraph 44 of the Complaint, Defendants deny the allegations contained therein.

ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

45.     In response to Paragraph 45 of the Complaint, Defendants admit that currently TGF only has possession of one gorilla, Ndume.   Defendants deny the remaining allegations contained therein.

46.     In response to Paragraph 46 of the Complaint, Defendants deny the allegations contained therein.

## CAUSES OF ACTION
## COUNT 1
## Breach of Contract with Specific Performance (TGF)

47.     In response to Paragraph 47 of the Complaint, Defendant incorporates by reference its responses above as if set forth in full at this point.

48.     In response to Paragraph 48 of the Complaint, Defendant denies the allegations contained therein.

49.     In response to Paragraph 49 of the Complaint, Defendant denies the allegations contained therein.

50.     In response to Paragraph 50 of the Complaint, Defendant admits the allegations contained therein.

51.     In response to Paragraph 51 of the Complaint, Defendant admits the allegations contained therein.

52.     In response to Paragraph 52 of the Complaint, Defendant admits the allegations contained therein.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

53.     In response to Paragraph 53 of the Complaint, Defendant denies the allegations contained therein.

54.     In response to Paragraph 54 of the Complaint, Defendant denies the allegations contained therein.

55.     In response to Paragraph 55 of the Complaint, Defendant denies the allegations contained therein.

56.     In response to Paragraph 56 of the Complaint, Defendant denies the allegations contained therein.

## COUNT II

### Replevin (TGF and Patterson)

57.     In response to Paragraph 57 of the Complaint, Defendants incorporate by reference their responses above as if set forth in full at this point.

58.     In response to Paragraph 58 of the Complaint, Defendants admit the allegations contained therein.

59.     In response to Paragraph 59 of the Complaint, Defendants deny that TGF's right to currently possess Ndume solely arises from an agreement with CZBG, but admits that TGF was never the "owning institution of Ndume."

60.     In response to Paragraph 60 of the Complaint, Defendants deny that CZBG has a right to possession of Ndume.   Defendants admit the remaining allegations contained therein.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

61. In response to Paragraph 61 of the Complaint, Defendants admit that TGF does not own Ndume, but deny the remaining allegations contained therein.

62. In response to Paragraph 61 of the Complaint, Defendants admit that Dr. Patterson knew that TGF did not own Ndume, who is owned by CZBG, but deny the remaining allegations contained therein.

63. In response to Paragraph 63 of the Complaint, Defendants deny the allegations contained therein.

64. In response to Paragraph 64 of the Complaint, Defendants deny the allegations contained therein.

65. In response to Paragraph 65 of the Complaint, Defendants deny the allegations contained therein.

66. In response to Paragraph 66 of the Complaint, Defendants deny the allegations contained therein.

67. In response to Paragraph 67 of the Complaint, Defendants deny the allegations contained therein.

68. In response to Paragraph 68 of the Complaint, Defendants deny the allegations contained therein.

69. In response to Paragraph 69 of the Complaint, Defendants deny the allegations contained therein.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

# COUNT III

## Conversion (TGF and Patterson)

70.　In response to Paragraph 70 of the Complaint, Defendants incorporate by reference their responses above as if set forth in full at this point.

71.　In response to Paragraph 71 of the Complaint, Defendants admit that CZBG owns Ndume, but deny that CZBG has the sole right to possess Ndume.

72.　In response to Paragraph 72 of the Complaint, Defendants deny that TGF's right to currently possess Ndume solely arises from an agreement with CZBG, but admit that TGF "has never owned Ndume."

73.　In response to Paragraph 73 of the Complaint, Defendants admit the allegations contained therein.

74.　In response to Paragraph 74 of the Complaint, Defendants admit that TGF never owned Ndume, but deny the remaining allegations contained therein.

75.　In response to Paragraph 75 of the Complaint, Defendants admit that Dr. Patterson knew that TGF did not own Ndume, who is owned by CZBG, but deny the remaining allegations contained therein.

76.　In response to Paragraph 76 of the Complaint, Defendants deny the allegations contained therein.

77.　In response to Paragraph 77 of the Complaint, Defendants deny the allegations contained therein.

78.    In response to Paragraph 78 of the Complaint, Defendants deny the allegations contained therein.

79.    In response to Paragraph 79 of the Complaint, Defendants deny the allegations contained therein.

80.    In response to Paragraph 80 of the Complaint, Defendants deny the allegations contained therein.

81.    In response to Paragraph 81 of the Complaint, Defendants deny the allegations contained therein.

82.    In response to Paragraph 82 of the Complaint, Defendants deny the allegations contained therein.

**AFFIRMATIVE DEFENSES**

For their affirmative defenses, Defendants state and allege as follows:

83.    The entire Complaint (and all relief CZBG seeks therein) is barred by the doctrine of impossibility/impracticability.  One of the principal purposes of the December 31, 2015 agreement, and inherent in that agreement, was that the parties (TGF and CZBG) had agreed and promised to act in the best interest of Ndume. This currently requires the parties to refrain from taking any action that will physically or emotionally harm Ndume.  CZBG seeks to permanently transfer him from TGF to CZBG, ignoring the risk that such a transfer will likely harm, or even kill, Ndume.   When the agreement was executed, neither contracting party contemplated that transferring and relocating Ndume could pose the risk of injury or

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

death.  The combination of his current age (27 years later) and realistic concerns regarding how such a transfer would harm him emotionally (both given his history at the zoo and the recent death of Koko) make the performance CZBG seeks impossible, without serious risks to Ndume.  At a minimum, such risks make specific performance or the transfer of Ndume as alleged highly impractical.

84.     The entire Complaint (and all relief CZBG seeks therein) is also barred by the doctrine of illegality.  Well-settled public policy, enforced by both state and federal laws, establishes that no person may commit an act, which is substantially certain to injure, harm, wound, torture or kill an animal, including during transport, particularly an endangered species.  The "performance" CZBG seeks under the agreement will likely injure, harm, wound, torture, or even kill, Ndume.  As such, taking such action under the existing circumstances would be unlawful.  Such "performance," if truly required by the contract, would render it void as against public policy.  Accordingly, CZBG is not entitled to either damages, specific performance or the possession of Ndume as its Complaint seeks.

# COUNTERCLAIM OF DEFENDANT THE GORILLA FOUNDATION AGAINST PLAINTIFF, ZOOLOGICAL SOCIETY OF CINCINNATI, DBA CINCINNATI ZOO & BOTANICAL GARDEN, AN OHIO NON-PROFIT CORPORATION

Defendant TGF states and alleges as follows:

## PARTIES

85.     Defendant TGF is a 501(c)(3) non-profit organization, and an accredited sanctuary, whose primary purpose is to engage in scientific and

1   educational work for the preservation and optimal care of great apes (including
2   without limitation, gorillas), both nationally and internationally.  TGF is a citizen of
3   California.

5   86.    TGF is informed and believes and thereon alleges that Plaintiff CZBG
6   is a 501(c)(3) non-profit organization, and is a citizen of Ohio.

8   **JURISDICTION**

10   87.    If this Court has jurisdiction over the Complaint pursuant to 28 U.S.C.
11   §1332, then this Court has supplemental jurisdiction over this Counterclaim
12   pursuant to 28 USC §1367(a).  While CZBG is a non-resident of California, by
13   filing the Complaint, CZBG has consented to the jurisdiction of this Court.

15   **FACTUAL BACKGROUND**

17   88.    TGF and Dr. Patterson have significantly advanced the scientific
18   research regarding animal/human communication starting with their groundbreaking
19   work with the gorilla Koko in 1972.  Koko became internationally famous for her
20   ability to communicate by use of sign language with humans.  Dr. Patterson also
21   worked with Michael, a silverback, who also demonstrated a similar ability of the
22   great apes to communicate with humans via sign language, natural gestures and art.

24   89.    Ndume, a male gorilla, was born at CZBG.  CZBG later transferred him
25   to Brookfield Zoo in Chicago ("Brookfield").  Ndume, who carries an incurable
26   parasitic infection common to gorillas in zoos, was particularly ill-suited to public
27   display, both physically and emotionally.  Specifically, Ndume, who was frustrated
28   and angry in both zoo environments, routinely threw his own feces and his

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA  91356

regurgitated food.   These stress manifestations were indicative of Ndume's emotional distress, and offended the zoo patrons.

90.    In 1991, not 1998, an agreement was reached between TGF and CZBG to transfer Ndume to California to be with Koko.  Koko had selected him from a review of videos of Ndume and two other male gorillas, and the CZBG, Association of Zoos and Aquariums ("AZA") and the Gorilla Species Survival Plan ("GSSP") were more than happy to agree to their potential bonding, as it solved their problems with Ndume.

91.    When Ndume was transferred to TGF, the then-current CZBG Zoo Director requested, and the TGF principals agreed, that in the best interests of Ndume, he should not be returned to the zoo.  After Ndume arrived at TGF, it soon became clear that Ndume had an emotional/behavioral problem (i.e., throwing) that would recur if he ever returned to a zoo environment.  The CZBG Zoo Director knew that TGF was a sanctuary (not open to the public), which could offer Ndume a stress-free environment not available at any zoo.  His request was borne from his concern for the well-being of Ndume, and his assessment proved entirely accurate.

92.    Many years passed.  Ndume and Koko bonded emotionally.  While they mated, they did not produce offspring.  Even so, they were best of friends and spent most of their time together, and with their human caregivers.  The stress behaviors Ndume manifested in two different zoo environments subsided during his 27 years at the TGF sanctuary.  Similarly, CZBG monitored his condition (starting in 2013), but never voiced any significant reason for concern regarding his care at TGF.

93.    In 2014, after the original CZBG Zoo Director retired, CZBG, GSSP

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

1   and the AZA, decided to transfer Ndume back to CZBG and leave Koko without a

2   companion.  They knew Ndume would face the same zoo conditions, which had

3   seriously affected his well-being when he was a much younger gorilla – and also

4   leave Koko living without gorilla companionship.  24 years older at that time (at age

5   34), he was approaching "old age" for a gorilla and would have less ability to cope

6   with either a transfer or reintroduction into such a stressful environment.   But,

7   despite all these issues, they intended to transfer him anyway.

8

9       94.    Well aware that the transfer would be contrary to their general policy of

10  not leaving gorillas alone and contrary to the best interests of both Koko and

11  Ndume, CZBG pressed ahead with its plans to bring Ndume back to Cincinnati.  It

12  did so knowing such a move would emotionally devastate both gorillas, after

13  sharing 24 years together.  In the process, CZBG forced TGF into an untenable

14  situation.    TGF either had to agree to transfer Ndume back to Cincinnati

15  immediately, or sign an amendment to the original agreement, promising to return

16  Ndume upon the death of Koko.

17

18      95.    TGF reluctantly executed the 2015 agreement (attached to the

19  Complaint as Exhibit B) knowing that any other decision would emotionally crush

20  both gorillas and might well result in the death of one or both of them.  At the same

21  time, TGF was also aware that silverback gorillas usually do not live as long as

22  females.  This created the likely potential that the issue of separation upon Koko's

23  demise would never become an issue.

24

25      96.    For this reason, TGF wanted to create a more robust gorilla family unit

26  moving forward.  However, despite the excellent care TGF provided to Koko and

27  Ndume and the exceptional physical and emotional health of both gorillas for more

28  than two decades, neither the AZA, the GSSP or CZBG supported or assisted TGF

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

1    in these efforts.   Indeed, CZBG required a provision in the 2015 agreement

2    prohibiting Ndume from living with any gorillas other than Koko.  Plus, CZBG and

3    the AZA made it clear that they would not support, and indeed would block, any

4    efforts to bring in other gorillas to form a complete gorilla family unit.  At the same

5    time, it was clear from the gorilla population at CZBG that Ndume could not be

6    returned into any existing gorilla families in Cincinnati.

7

8        97.    TGF alleges the following paragraphs (through paragraph 105) on

9    information and belief, as follows:  Rather than support the TGF efforts to improve

10   the family environment for Koko and Ndume (after Michael's death) CZBG (in

11   concert with the AZA) intentionally blocked all TGF efforts to secure more gorillas.

12   They did so knowing that TGF was merely taking appropriate steps to protect the

13   emotional health of the two existing gorillas at TGF.  Significantly, CZBG and the

14   AZA took these actions because they were intimidated and frustrated by the

15   remarkable scientific breakthroughs achieved as part of the TGF work with Koko

16   and Michael.  They feared the strong outpouring of public attention and adoration

17   for Koko associated with her demonstrated ability to communicate with humans.

18   They viewed the body of proof which TGF and Dr. Patterson had developed proving

19   that these great apes could communicate on a human level, as a threat to their

20   existence, not as a remarkable scientific break-through.

21

22       98.    Indeed, CZBG found this public awareness and adoration for Koko so

23   intimidating that as part of their original agreement in 1991 to transfer Ndume, they

24   insisted that he not be included in any scientific work involving human/gorilla

25   communication.  The mere possibility that a gorilla might communicate extreme

26   dissatisfaction with the way s/he had been treated in a zoo was viewed as an entirely

27   unacceptable risk.

28

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

99.   In short, CZBG hoped to prevent public embarrassment regarding the way they were treating their animals, and particularly great apes.  Unlike TGF, which was focused upon studying, developing and documenting their remarkable intellect, emotional capacity and ability to communicate, CZBG was using them as chattel.  It chose to ignore their individuality and emotional suffering in a zoo environment, relying instead upon their unique physical appearance, all to draw patrons and secure continuing financial support for their business operations.

100.   With this mindset, defendants have routinely acted without concern for the remarkable intellect and sensitive emotions of their gorillas, moving them around like pieces on a chessboard.  Keenly aware that gorillas could easily capture public attention as highly intelligent mammals, CZBG did not want to encourage or intentionally permit the advancement of the TGF research.

101.   Indeed, their fear was grounded in the notable public outcry regarding the harm caused by captivity and mistreatment of large, intelligent mammals, labeled "charismatic megafauna" by the AZA.  This groundswell of public attention and pressure on the CZBG business model, employed by all AZA member organizations, has been a subject of great concern to their business model and further existence.  Manifestations of its impact have included the demise of Ringling Brothers, the public outcry against the abuse of elephants for human entertainment, the same kind of public sentiment promoting the release of captive whales and dolphins from SeaWorld; and the public outpouring of emotion for Koko.

102.   Each of these examples made it clear to the AZA, GSSP and CZBG that the climate was changing in a way that threatened their continued treatment of gorillas as property, without consideration of their sensitive, shy, uniquely emotional personalities.  Gorillas are thus ill-suited for the CZBG zoo environment

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

1   and public display.  But, CZBG, following AZA policy, chose not to react to this
2   public awakening by taking steps to protect and better care for their gorillas.
3   Instead, they treated this public awakening as a significant risk to their business
4   model.

5

6   103.   In the case of Ndume, CZBG chose to retaliate against TGF.  In an
7   effort to stop any further public interest or inquiry into zoo mistreatment of
8   intelligent, sentient creatures, they chose to take steps to publicly embarrass TGF,
9   remove Ndume from his 27-year home, and do everything in their power to prevent
10  TGF from getting more gorillas.  In this way, CZBG hoped to eliminate the potential
11  that TGF might (unintentionally) reveal the differences between the quality of
12  emotional care afforded to such intelligent and sensitive creatures at TGF, a
13  qualified sanctuary, as opposed to its zoo environment where these gorillas would
14  routinely be treated as property, and placed on public display.

15

16  104.   Part of the CZBG effort to harm TGF included public claims that TGF
17  is not a qualified and accredited Sanctuary, despite the facts proving the opposite
18  and a 45-year history of loving and excellent care to Koko, Michael and Ndume.
19  Indeed, CZBG is well aware that the sanctuary environment provided by TGF was,
20  and is, far superior for Ndume than any Zoo environment.

21

22  105.   These improper motives, as described herein, involved CZBG actions
23  putting its own interests above the health and well-being of Ndume.  The current
24  manifestation of these improper motives is its demand to hastily transfer him to
25  Cincinnati, knowing that the transfer itself, or his placement in isolation at CZBG,
26  or his placement in a family group of gorillas which will not accept him, will each
27  cause him serious emotional harm, and each could result in his death.  TGF did not
28  refuse to participate or cooperate with a potential transfer.  To the contrary, TGF

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA  91356

repeatedly requested information to confirm that Ndume would be safe, free from harm, emotionally supported, transferred to a better environment rather than a worse environment, and at a minimum, that CZBG would follow its own written protocols for gorilla transfers and care.  Only when CZBG refused to provide information and cooperatively discuss whether or not their hasty plans to transfer Ndume were in his best interests, did TGF find itself in the position that it had no choice but to place the well-being of Ndume above any contractual promises, which had been made under different circumstances.

106.   Setting aside the ulterior CZBG motives behind the transfer, TGF is independently justified in its concerns over the physical and emotional health of Ndume, particularly if CZBG is allowed to forcibly transfer him against his will and then put him back into a harmful zoo environment.

a.      Such a transfer can be very dangerous to a silverback gorilla, especially elderly gorillas and particularly those like Ndume who have been transferred before. The data for all zoo transfers involves gorillas being transferred from one zoo facility to another.  This data includes significant evidence regarding the demise of elderly gorillas during or following such stressful activities.  However, there is no data to evaluate the transfer of a gorilla born in a zoo environment, then transferred to a sanctuary (in this case for 27-years) and then back to a zoo environment.  All indications are that the transfer from sanctuary to zoo would be considerably more stressful in the first instance.  But, those stress factors are increased exponentially where the transferred gorilla is elderly, lived in the sanctuary for most of his life, and is to be returned to a zoo facility where he was incapable of coping with life on public display as a young gorilla.

b.      The CZBG environment poses serious health risks unique to Ndume.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

1   Not only is it highly likely that Ndume will not be integrated with other gorillas,

2   given the current CZBG population, it is highly likely that he will be housed in close

3   proximity to family groups of gorillas, frustrating on a continual basis, his natural

4   drive to attract females to form his own group.

5

6        c.    He will be returned to public display in front of loud zoo patrons,

7   which was a constant source of severe distress and frustration for him in his youth.

8   This will, at a minimum, undoubtedly cause his stress-induced incurable parasitic

9   infection (Balantidium coli) to flare up: creating a life-threatening condition.

10

11        d.    TGF overnight monitor staff, including Dr. Patterson who works with

12   him every day, unexpectedly witnessed an incredible, all-night Ndume display of

13   crying, screaming and stress, which only later did they learn followed discussions

14   about his potential transfer to a zoo as requested by CZBG.  Ndume understands a

15   good deal of spoken English, as do most zoo gorillas, who learn the way human

16   children do, by exposure.  The unexpected outbursts exhibited that night by Ndume

17   were recognized at the time as typical of gorilla males when threatened, including

18   by separation, producing such stress reactions.  TGF has been more careful about

19   having any further conversations on this topic near Ndume.  Not surprisingly, his

20   overnight stress reaction has not recurred.  As a result of these observations, TGF

21   believes that Ndume was and is extremely fearful about the prospect of being forced

22   to return to a zoo environment.

23

24        107.    In summary, at his advanced age, the CZBG plan to remove Ndume

25   from his 27-year sanctuary home, away from his longtime human caregivers, in

26   order to forcibly transfer him back into a public zoo environment, will create very

27   serious health risks, including death.

28

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

108.   In order to try and understand more about CZBG's plans for Ndume and in an effort to work out a mutually agreeable solution that was in his best interests, TGF asked CZBG to mediate this dispute, with an agreed focus upon the best interests of Ndume.   CZBG expressly refused, and instead filed the instant action.

## COUNT 1
### Declaratory Relief

109.   TGF repeats and realleges the allegations contained in Paragraphs 85 through 108, inclusive, as if set forth in full at this point.

110.   CZBG has asserted an immediate right to possession of Ndume based on the terms of the 2015 agreement, attached to the Complaint as Exhibit B. Specifically, CZBG contends that the agreement requires TGF to immediately transfer Ndume to CZBG, to permit CZBG to display Ndume to zoo patrons in proximity to, but based on its current gorilla population, physically isolated from, other gorillas.

111.   TGF contends that these CZBG requested actions are likely to harm, if not kill, Ndume given: a) his advanced age, b) his prior transfers, which may increase his risks upon future transfer, c) his emotional state given the grief associated with the recent loss of his life-partner Koko, d) his probable extreme negative physical and emotional reaction if efforts are made to forcibly transfer him, e) his separation from the human caregivers he has known for almost three decades, f) his prior history of poor performance at zoos, including CZBG, prompting his transfer from one zoo to another and then to TGF, g) the likely return of his physical stress induced conditions, which were manifest at both zoos during his youth, and,

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA  91356

h) Ndume's family history, which reveals: 1) Ndume's half-brother Milt, died of heart failure at age 16 while being transferred between zoos, 2) Ndume's son Mtu-Chuma died of injuries from a bite wound by another gorilla in a bachelor group at the Disney zoo in Florida and 3) According to the AZA/GSSP 2017 Studbook and 2009 and 2017 Population Analysis & Breeding and Transfer Plans, Ndume's son Zuza was living solitarily at the Cincinnati Zoo in 2009 before his transfer to the Sedgwick Zoo in 2010, where attempts to integrate him have been unsuccessful.

112.   For all of the foregoing reasons, it is far from clear that CZBG can or will even attempt to provide any gorilla companions for Ndume.  The issue of companionship for Ndume is important, and cannot be ignored either at TGF, where efforts are ongoing to introduce new gorillas, or at CZBG.  Until this issue can be resolved, Ndume should not be transferred, at great risk, for no reason.

113.   As such, TGF contends that interpreting and enforcing the outdated terms of the 2015 agreement in the manner requested by CZBG will likely injure, harm or potentially kill Ndume, all in violation of Federal and/or State laws, which apply under these circumstances. No jurisdiction would allow an owner to intentionally take such acts, which are substantially certain to cause harm to any animal, much less an endangered species.

114.   Hence, such compliance would not only be illegal, it would certainly be impractical.  Transferring Ndume and thereby creating a serious likelihood of injury or death would thwart the very purpose of the agreement, which has been and should continue to be interpreted in such a way as to protect Ndume by providing him with the best home and care possible.  TGF has provided such care for 27 years and is committed to providing equal quality care going forward.  CZBG cannot.

1    115.   A current, ripe and justicable controversy exists between and among

2    the parties and is fully susceptible of judicial resolution.

4                                    **REQUEST FOR RELIEF**

6    WHEREFORE, TGF respectfully requests that the Court enter judgment in its

7    favor against CZBG as follows:

9    1.     Declaring and adjudging that the 2015 agreement does not permit

10   CZBG to transfer Ndume to be put on public display in isolation from other gorillas,

11   risking his life, or at a minimum, his physical and emotional wellbeing;

13   2.     Declaring and adjudging that CZBG may no longer interfere with the

14   lawful efforts of TGF to secure other gorillas and take such actions that are in the

15   best interests of Ndume;

17   3.     Dismissing the entire CZBG complaint against TGF and Dr. Patterson,

18   with prejudice, on the merits and at its cost; and,

20   4.     Granting TGF all other further relief as it deems just and proper.

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

1   DATED: November 20, 2018

**CASSELMAN LAW GROUP**
DAVID B. CASSELMAN
DAVID POLINSKY
KIRK S. COMER

By:  _____*/s/ David B. Casselman*_____
DAVID B. CASSELMAN
Attorneys for Defendant and Counterclaimant The
Gorilla Foundation and Defendant Dr. Francine
Patterson

DATED: November 20, 2018

**COTCHETT PITRE & McCARTHY LLP**
FRANK M. PITRE
JULIE L. FIEBER

By:  _____*/s/ Frank M. Pitre*_____
FRANK M. PITRE
Attorneys for Defendant and Counterclaimant The
Gorilla Foundation and Defendant Dr. Francine
Patterson

CASSELMAN LAW GROUP
5567 RESEDA BOULEVARD, SUITE 330
TARZANA, CALIFORNIA 91356

ANSWER AND COUNTERCLAIM FOR DECLARATORY RELIEF; DEMAND FOR JURY TRIAL

# DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Defendant and Counterclaimant The Gorilla Foundation and Defendant Dr. Francine Patterson demand a trial by jury in this action of all issues so triable.

DATED: November 20, 2018

**CASSELMAN LAW GROUP**
DAVID B. CASSELMAN
DAVID POLINSKY
KIRK S. COMER


By:  _____*/s/ David B. Casselman*_____
DAVID B. CASSELMAN
Attorneys for Defendant and Counterclaimant The Gorilla Foundation and Defendant Dr. Francine Patterson

DATED: November 20, 2018

**COTCHETT PITRE & McCARTHY LLP**
FRANK M. PITRE
JULIE L. FIEBER


By:  _____*/s/ Frank M. Pitre*_____
FRANK M. PITRE
Attorneys for Defendant and Counterclaimant The Gorilla Foundation and Defendant Dr. Francine Patterson