Simon J. Frankel (Bar No. 171552)
Amy S. Heath (Bar No. 312516)
COVINGTON & BURLING LLP
One Front Street, 35th Floor
San Francisco, California 94111-5356
Telephone: + 1 (415) 591-6000
Facsimile: + 1 (415) 591-6091
Email: sfrankel@cov.com
Email: aheath@cov.com

Aaron M. Herzig *(pro hac vice)*
TAFT STETTINIUS & HOLLISTER LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
Telephone: (513) 381-2838
Email: aherzig@taftlaw.com

*Attorneys for Plaintiff Cincinnati Zoo & Botanical Garden*

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

ZOOLOGICAL SOCIETY OF CINCINNATI, D/B/A/ CINCINNATI ZOO & BOTANICAL GARDEN, an Ohio non-profit Corporation

Plaintiff,

v.

THE GORILLA FOUNDATION, a California Corporation; and FRANCINE PATTERSON, an individual

Defendants.

Civil Case No.: 4:18-cv-06529

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT**

Date: January 3, 2019
Time: 1:30 p.m.
Courtroom: 3, 17th Floor
Judge: Hon. Richard Seeborg

# TABLE OF CONTENTS

I. MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

II. UNDISPUTED FACTS ..... 2

*Ndume is transferred to TGF* ..... 3

*Koko passes away and the GSSP concludes that Ndume should be transferred to CZBG* ..... 4

*Defendants cease cooperation and refuse to transfer Ndume back to CZBG* ..... 5

III. ARGUMENT ..... 5

A. CZBG Is Entitled to Summary Judgment and Specific Performance on its Contract Claim. ..... 6

1. The Undisputed Facts, Admitted by TGF, Establish CZBG's Contract Claim. ..... 6

B. The Undisputed Facts Establish that CZBG Is Entitled to Specific Performance. ..... 7

C. The Undisputed Facts Admitted by TGF Establish CZBG Is Entitled to Summary Judgment on its Replevin Claim, Requiring Return of Ndume to CZBG. ..... 10

D. The Undisputed Facts Dictate Summary Judgment on CZBG's Conversion Claim. ..... 11

IV. CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adler v. Taylor*, No. CV 04-8472-RGK, 2005 WL 4658511 (C.D. Cal. Feb. 2, 2005) .... 10

*Benedict v. Hewlett-Packard Co.*, No. 13–CV–00119–LHK, 2014 WL 234218 (N.D. Cal. Jan. 21, 2014) .... 10

*Blue Skies Racing Stable, LLC v. O'Sullivan Farms*, LLC, No. 2012-CA-002116-MR, 2014 WL 3721160 (Ky. Ct. App. July 25, 2014) .... 9

*Brooks v. FCI Lender Servs., Inc.*, No. 2:16-cv-2598-KJM-KJN PS, 2017 WL 345527, at *6 (E.D. Cal. Jan. 23, 2017) .... 9

*Brown v. Stroud*, No. 08-cv-2348 JSW, 2014 WL 1308342 (N.D. Cal. Mar. 31, 2014) .... 10

*Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998) .... 12

*Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501 (2008) .... 6

*Elliott v. Jones*, 101 A.872 (Del. Ch. 1917) .... 9

*Ellis v. Mihelis*, 384 P.2d 7 (Cal. 1963) .... 7

*In re Emery*, 317 F.3d 1064 (9th Cir. 2003) .... 12

*Entercom Commc'ns Corp. v. Royce Int'l Broad. Corp.*, No. C041067, 2003 WL 21002873 (Cal. Ct. App. May 5, 2003) .... 8

*Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665 (9th Cir. 2010) .... 7

*Glynn v. Marquette*, 152 Cal. App. 3d 277 (Ct. App. 1984) .... 8

*Harris v. Barcroft*, 543 P.2d 656 (Or. 1975) .... 9

*Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F. Supp. 3d 1106, 1140 (N.D. Cal. 2017) .... 10

*Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*,
161 F. Supp. 3d 910, 917 (E.D. Cal. 2016)....12

*Johnson v. Meltzer*,
134 F.3d 1393 (9th Cir. 1998) ....2

*KGM Harvesting Co. v. Fresh Network*,
36 Cal. App. 4th 376 (1995) ....9

*Kramer v. Puracyp, Inc.*,
No. D070407, 2017 WL 1034474 (Cal. Ct. App. Mar. 17, 2017)....8

*Lansmont Corp. v. SPX Corp.*,
No. 5:10-CV-05860 EJD, 2012 WL 6096674 (N.D. Cal. Dec. 7, 2012)....8

*LocusPoint Networks, LLC v. D.T.V. LLC*,
No. 14-CV-01278-JSC, 2015 WL 5043261 (N.D. Cal. Aug. 26, 2015)....8

*Los Angeles Fed. Credit Union v. Madatyan*,
209 Cal. App. 4th 1383 (2012) ....12

*Martinez v. Robledo*,
210 Cal. App. 4th 384 (2012) ....9

*Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*,
475 U.S. 574 (1986)....5

*Mindys Cosmetics, Inc. v. Dakar*,
611 F.3d 590 (9th Cir. 2010) ....12

*Morris v. Sparrow*,
287 S.W.2d 583 (Ark. 1956)....9

*Oasis W. Realty, LLC v. Goldman*,
250 P.3d 1115 (Cal. 2011)....6

*In re Peklar*,
260 F.3d 1035 (9th Cir. 2001) ....12

*Petersen v. Hartell*,
707 P.2d 232 (Cal. 1985)....7

*Real Estate Analytics, LLC v. Vallas*,
160 Cal. App. 4th 463 (2008) ....7

*Rodman v. Safeway Inc.*,
125 F. Supp. 3d 922, 933 (N.D. Cal. 2015), *aff'd*, 694 F. App'x 612 (9th Cir. 2017) ....7

*S. Cal. Gas Co. v. City of Santa Ana*,
336 F.3d 885 (9th Cir. 2003) ....6

*Schroeder v. McDonald*,
55 F.3d 454 (9th Cir. 1995) ....................2

*Stockton Morris Plan Co. v. Mariposa County*,
99 Cal. App. 2d 210 (1950) ....................10

*Tamarind Lithography Workshop, Inc. v. Sanders*,
143 Cal. App. 3d 571 (1983) ....................8

*Taylor v. Forte Hotels Int'l*
235 Cal. App.3d 1119, 1124 (1991) ....................12

*Valentine v. Berth*,
No. CV 960071681, 1997 WL 282119 (Conn. Super. Ct. May 19, 1997) ....................9

**Statutes**

Cal. Civ. Code § 3386....................7

**Other Authorities**

56 FR 6495 § 3.81(a) (Feb. 15, 1991)....................3

Fed. R. Civ. P. 56(a) ....................5

Fed. R. Civ. P. 64....................11

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that, on January 3, 2019, at 1:30 p.m., or at any other date and time the Court may choose, in the Courtroom of the Honorable Richard Seeborg, United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, CA 94102, Plaintiff the Zoological Society of Cincinnati, d/b/a Cincinnati Zoo & Botanical Garden ("Plaintiff" or "CZBG"), will and hereby does move for summary judgment on its breach of contract (Count I), replevin (Count II), and conversion (Count III) claims under Federal Rule of Civil Procedure 56.[1]

By this Motion, CZBG seeks summary judgment and specific performance with respect to the 2015 contract between CZBG and The Gorilla Foundation ("TGF"), which requires the transfer of Ndume, a western lowland gorilla, to CZBG, and summary judgment on the replevin and conversion claims, requiring return of Ndume to CZBG. This Motion is based on this Notice, the Memorandum of Points and Authorities, all pleadings and papers on file in this action, and any other information and argument that the parties may present at or before the hearing on the motion.

## I. MEMORANDUM OF POINTS AND AUTHORITIES

In 1991, CZBG loaned a western lowland gorilla, Ndume, to Defendant TGF to be a companion to a gorilla named Koko, who was living at TGF. ECF No. 1, Verified Compl. ("Compl.") ¶ 1. The operative loan contract (the "Agreement"), which CZBG and TGF signed in 2015, is unambiguous. It provides, without caveat or reservation, that "Upon the death of 'Koko', 'Ndume' will be placed at an AZA institution recommended by the Gorilla Species Survival Plan [] and the Cincinnati Zoo & Botanical Garden." Compl. ¶ 26; *id.* Ex. B.

The facts are uncontroverted and uncomplicated. Koko has died, and the Gorilla Species Survival Plan (the "GSSP") and CZBG have recommended that Ndume return to CZBG.

Unfortunately, TGF will not abide by the contract terms. After Koko died in June 2018, a team of experts evaluated Ndume's condition and needs, considered several potential zoos to house Ndume,

[1] Given the straightforward nature of the case, CZBG does not believe that a hearing is necessary and respectfully submits that this motion can be decided on the papers.

and concluded that Ndume should be returned to CZBG. CZBG is a world-class zoo facility with a staff of professionals trained in the enrichment and care of gorillas, and it recently completed a major expansion and renovation of its primate habitat. TGF was informed of the recommendation by GSSP and CZBG. However, despite its unequivocal contractual obligation to release Ndume upon Koko's death, TGF is now reneging on this agreement and refusing to transfer Ndume back to CZBG. This breach denies CZBG its legal right to possession of Ndume.

To redress these harms, the only adequate remedy is to order specific performance of the agreement's provision requiring transfer of Ndume back to CZBG. California law recognizes that such relief is appropriate and necessary here because Ndume is unique and invaluable and therefore it would be impossible to compensate for his loss using money damages. CZBG is also entitled to return of Ndume based on replevin and conversion.

TGF has no legal basis for refusing to return Ndume to CZBG. Indeed, TGF has admitted in its Answer the facts entitling CZBG to summary judgment. Because TGF has admitted all of the relevant facts, this is the unusual case where summary judgment at this early stage is warranted. There is no reason to further delay the return of Ndume to Cincinnati. The Court should enter summary judgment for CZBG on the claims for breach of contract, replevin, and conversion, and should direct specific performance of the contract requiring TGF to return Ndume to CZBG.[2]

## II. UNDISPUTED FACTS[3]

CZBG operates a zoological park in Cincinnati, Ohio accredited by the Association of Zoos & Aquariums (the "AZA"). Compl. ¶ 5; *see* ECF No. 18 ("Answer") ¶ 5 (admitting allegation). Ndume is a 37-year-old male western lowland gorilla (studbook #776) who was born at CZBG in 1981. Compl.

---

[2] There is no merit to TGF's counterclaim for declaratory judgment, which is contrary to its unambiguous contractual obligation to return the animal. If the Court grants this motion for summary judgment, the counterclaim necessarily fails and should be dismissed.

[3] The relevant facts are set out in CZBG's Verified Complaint, ECF No. 1, and are again verified in this motion. *See Schroeder v. McDonald*, 55 F.3d 454, 460 (9th Cir. 1995) (stating that a verified complaint is treated as an affidavit under Rule 56 to the extent it is based on personal knowledge); *see also Johnson v. Meltzer*, 134 F.3d 1393, 1399-1400 (9th Cir. 1998) ("Like a verified complaint, a verified motion functions as an affidavit."). To the extent material for this motion, the relevant facts have been admitted by Defendants in their Answer (ECF No. 18), as set out in the text.

¶ 14; *see* Answer ¶ 14 (admitting). Western lowland gorillas are critically endangered animals. Compl. ¶ 1; *see* Answer ¶ 1 (admitting). CZBG has been caring for gorillas since 1931, and is currently responsible for the care and survival of ten western lowland gorillas housed on its premises, including several relatives of Ndume. Compl. ¶ 13; *see* Answer ¶ 13 (partially admitting).

TGF is a self-described "gorilla sanctuary" in California, but is not an AZA-accredited facility. Compl. ¶ 16; *see* Answer ¶ 16 (partially admitting). TGF was founded, and is currently run, by Defendant Francine Patterson ("Patterson"), TGF's President, CEO, and Director of Research. *Id.* ¶¶ 16-17.

***Ndume is transferred to TGF***

In 1991, when Ndume was ten years old, TGF approached CZBG about loaning Ndume to TGF. *Id.* ¶ 1; *see* Answer ¶ 1 (admitting). At that time, TGF had only two gorillas, a female named Koko and another male named Michael. Compl. ¶ 16; Answer ¶ 16 (admitting).[4] Socialization and companionship are critical to the well-being of gorillas,[5] and TGF hoped Ndume would serve as a companion to, and potential mate for, Koko. *Id.* ¶¶ 16, 19, 41, 44. CZBG agreed to the loan, believing that the arrangement would benefit Ndume as well. *Id.* ¶ 18; *see id.* ¶ 41. The other gorillas residing at CZBG at the time were females in established breeding situations and therefore not suitable companions for Ndume. *Id.* ¶ 41. Ndume was transferred from CZBG in Ohio to TGF in California. *See id.* ¶¶ 1, 18; *see* Answer at ¶¶ 1, 18 (admitting). The parties ultimately formalized the agreement to temporarily loan Ndume to TGF in a written document dated October 21, 1998. Compl. ¶ 18; *id.* Ex. A (1998 Loan Agreement); *see* Answer ¶ 18 (admitting).

On December 31, 2015, CZBG and TGF entered into a revised loan agreement (the "Agreement"), which replaced the parties' agreement from 1998. Compl. ¶ 24; *see* Answer ¶ 24

---

[4] Michael passed away in April 2000. *Id.* ¶ 16; *see* Answer ¶ 16 (admitting).

[5] In fact, the United States Department of Agriculture's Animal Welfare Regulations require that "nonhuman primates of species known to exist in social groups in nature"—which includes gorillas—be housed in a way that accommodates their social need to interact with conspecifics (in this case, other gorillas). *See* 56 FR 6495 § 3.81(a) (Feb. 15, 1991).

(admitting). A copy of the Agreement is attached to the Verified Complaint as Exhibit B, and separately to this Motion as Exhibit 1. The Agreement expressly provides:

> Cincinnati Zoo & Botanical Garden has loaned to the Gorilla Foundation the above-listed animal as a companion to the female gorilla 'Koko.' * * * Upon the death of 'Koko', 'Ndume' will be placed at an AZA institution recommended by the Gorilla Species Survival Plan (SSP) and the Cincinnati Zoo & Botanical Garden.

Compl. ¶ 26; *see* Answer ¶ 26 (admitting).

***Koko passes away and the GSSP concludes that Ndume should be transferred to CZBG***

On June 19, 2018, Koko passed away. Compl. ¶ 2; *see* Answer ¶ 2 (admitting). Pursuant to the terms of the Agreement, following Koko's passing, TGF received notice on July 31, 2018 that it would be necessary to begin planning the transfer of Ndume to an AZA-accredited institution, and that TGF would be further notified once a selection was made. Compl. ¶ 29; *see* Answer ¶ 29 (admitting).

A number of different specialists and experts from the GSSP and the AZA all considered Ndume's specific circumstances and needs, as well as factors relevant to gorillas as a species, and collectively determined that Ndume should return to CZBG. *Id.* ¶¶ 2, 41; *id.* Ex. G (September 24, 2018 Letter from GSSP and CZBG). The GSSP concluded that CZBG would provide Ndume with the best opportunity for necessary socialization with other gorillas, which is critical to gorillas' well-being.[6] Compl. ¶¶ 30, 41; *see* Answer ¶¶ 30, 41 (admitting).

The GSSP notified TGF of its decision by letter dated August 16, 2018, which stated: "the time has come for us to move Ndume back into a zoo accredited by the [AZA], as per the signed loan agreement between TGF and [CZBG]. . . . As such, the [GSSP] and, by extension, AZA, recommends that Ndume be transferred to CZBG as soon as possible." Compl. ¶ 30; *id.* Ex. C (August 16, 2018 Letter from GSSP); *see* Answer ¶ 30 (admitting). This letter was followed up with a conference call on August 29, 2018 between representatives of CZBG, the GSSP and TGF, during which the parties

---

[6] People for the Ethical Treatment of Animals applauded this decision, issuing a press statement that read: "[CZBG] is giving Ndume the chance to thrive and explore in a complex environment in the company of other gorillas and away from The Gorilla Foundation, with its deteriorating facilities and failure to provide veterinary care." *Id.* ¶ 39; *see* Answer ¶ 39 (admitting).

discussed steps toward planning Ndume's transfer. Compl. ¶ 31; *see* Answer ¶ 31 (admitting relevant allegations).

***Defendants cease cooperation and refuse to transfer Ndume back to CZBG***

Although it initially appeared that TGF would cooperate in returning Ndume to Cincinnati, in mid-September 2018, TGF changed course and refused to allow crate fabricators to access Ndume's enclosure to install a crate that would be used to facilitate his transfer. Compl. ¶ 34; *see* Answer ¶ 34 (admitting relevant allegations). Then, in a letter dated September 18, 2018, Patterson informed CZBG and the GSSP that TGF "disagree[d]" with the GSSP's recommendation to relocate Ndume to CZBG and made clear that it did not intend to return Ndume to CZBG. Compl. ¶ 35; *see* Answer ¶ 35 (admitting). Rather, she instead recommended that CZBG should send "one or two other gorillas" to TGF to live with Ndume. Compl. ¶ 35. Patterson also dismissed the indisputable fact that Ndume is now living in total isolation from his species because, according to her, she and other TGF personnel are "human great apes." *Id.* ¶ 38; *see* Answer ¶ 38. A copy of this letter is attached to the Complaint as Exhibit E.

After further discussions failed to result in a plan to move Ndume, CZBG filed a Complaint against TGF and Patterson for breach of contract, replevin, and conversion on October 25, 2018. *See* ECF No. 1.

CZBG now moves for summary judgment on its claim alleging that TGF has breached the Agreement by refusing to transfer Ndume to the location selected by the GSSP as it explicitly promised to do in the parties' contract, as well as on its claims for replevin and conversion, so that Ndume can be promptly returned to CZBG.

## III. ARGUMENT

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsuhita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Advisory Committee Note to 1963 Amendment of Fed. R. Civ. P. 56(e)). The Court "may

grant summary judgment motions touching upon contract interpretation when the agreement is unambiguous." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

### A. CZBG Is Entitled to Summary Judgment and Specific Performance on its Contract Claim.

#### 1. The Undisputed Facts, Admitted by TGF, Establish CZBG's Contract Claim.

It is undisputed that TGF has breached its contract with CZBG and therefore that summary judgment on this claim is warranted. To establish a claim for breach of contract in California requires: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011). There is no question that each element is satisfied here.

A contract indisputably exists. Both parties signed the Agreement in 2015 (which updated their earlier agreement from 1998), and it has governed their relationship for the last three years. *See* Compl. ¶ 24; *id.* Ex. B. In their Answer, Defendants have admitted the Agreement governs the parties' rights as to Ndume. *See* Answer, ECF No. 18 ¶ 24. Indeed, even while TGF has attempted to evade its obligations under the Agreement, it has never suggested that this contract does not exist or control. Nor can there be any contention that CZBG has failed to perform under the agreement. Rather, CZBG has done exactly what the contract required it to do by permitting Ndume to reside at TGF for the purpose of serving as Koko's companion.

It is also clear that TGF has breached the contract. The parties expressly agreed that when Koko died, Ndume would be returned to the AZA institution selected by the GSSP and CZBG. Compl. ¶¶ 24-26; *id.* Ex. B. TGF has admitted this fact, and the fact that the global gorilla experts at the GSSP determined that Ndume should return to Cincinnati. Answer ¶¶ 24-30 (admitting allegations); *see* Compl. ¶ 30 & Ex. C. Nonetheless, TGF has refused to release Ndume to his family at CZBG, in clear contravention of what it promised in the Agreement. *See Cent. Valley Gen. Hosp. v. Smith*, 162 Cal. App. 4th 501, 533 (2008) (explaining that a breach of contract by nonperformance is an "unjustified failure to perform a material contractual obligation when performance is due"); Compl. ¶ 35; *id.* Ex. E; *see* Answer ¶ 35 (admitting to sending Ex. E). Finally, TGF's breaches have plainly resulted in damages. Most basically, while TGF received what it bargained for under the Agreement (the loan of

Ndume according to the terms agreed by the parties), CZBG is being denied what it was promised—specifically, the right to have Ndume transferred upon Koko's death. *See, e.g.*, *Foster Poultry Farms, Inc. v. SunTrust Bank*, 377 F. App'x 665, 669 (9th Cir. 2010) (holding that "under California law, a defendant's unjust enrichment can satisfy the 'damages' element of a breach of contract claim"); *see also Rodman v. Safeway Inc.*, 125 F. Supp. 3d 922, 933 (N.D. Cal. 2015) (recognizing that in a breach of contract action, the plaintiffs were entitled to benefit of the bargain damages), *aff'd*, 694 F. App'x 612 (9th Cir. 2017).

Based on the undisputed facts, CZBG satisfies each of the elements of its breach of contract cause of action and is entitled to summary judgment on this claim.

**B. The Undisputed Facts Establish that CZBG Is Entitled to Specific Performance.**

Given TGF's unjustified refusal to abide by its agreement to return Ndume, the only suitable remedy is to order specific performance of the Agreement's transfer requirement. Whether to grant such relief is within the trial court's discretion. *See Petersen v. Hartell*, 707 P.2d 232, 234 (Cal. 1985). To obtain specific performance following a breach of contract, a plaintiff must typically demonstrate: (1) "an underlying contract that is both reasonable and supported by adequate consideration"; (2) "the existence of a mutuality of remedies"; (3) "contractual terms which are sufficiently definite to enable the court to know what it is to enforce"; (4) "a substantial similarity of the requested performance to that promised in the contract"; and (5) "the inadequacy of his legal remedy." *Real Estate Analytics, LLC v. Vallas*, 160 Cal. App. 4th 463, 472 (2008) (quoting *Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983) (internal quotation marks omitted)). Applying this standard to the facts here makes clear that specific performance is warranted and necessary.

As to the first element, TGF cannot plausibly challenge that the underlying contract is reasonable and supported by adequate consideration. The parties had been operating under the current agreement for the last three years, and a substantially similar version of the Agreement for the twenty-four years prior to that. TGF has never identified or even suggested that there is any infirmity in either Agreement.

The second element, mutuality of remedies, focuses on whether the plaintiff has performed its obligations under the contract. *See* Cal. Civ. Code § 3386 (stating that specific performance may be compelled if the "agreed counter performance has been substantially performed"); *Ellis v. Mihelis*, 384

P.2d 7, 12 (Cal. 1963) (recognizing that "the only important consideration" related to mutuality of remedies "is whether a court of equity which is asked to specifically enforce a contract against the defendant is able to assure that he will receive the agreed performance from the plaintiff"). The second element is also satisfied here. CZBG has unquestionably performed under the agreement by allowing Ndume to remain at TGF as a companion for Koko while Koko was alive. *See, e.g.*, *Tamarind*, 143 Cal. App. 3d at 575 (concluding that movant had satisfied the mutuality of remedies requisite by fully performing his obligations pursuant to the agreement).

Satisfaction of the third and fourth elements ("contractual terms which are sufficiently definite to enable the court to know what it is to enforce" and "a substantial similarity of the requested performance to that promised in the contract") is also beyond dispute. The contract could not be clearer: Upon Koko's passing, Ndume is to be returned to the AZA institution selected by the GSSP, and the GSSP selected Cincinnati. *See* Compl. Exs. B, C; Answer ¶ 30 (admitting allegations). CZBG seeks only performance of this term *exactly* as provided in the Agreement. *See, e.g.*, *Lansmont Corp. v. SPX Corp.*, No. 5:10-CV-05860 EJD, 2012 WL 6096674, at *4 (N.D. Cal. Dec. 7, 2012) (concluding that specific performance was warranted where performance sought was "nothing more than what the terms of the [parties' contract] provide").

As to the final element—the inadequacy of a legal remedy—it is clear that there is no suitable remedy at law for TGF's refusal to turn over Ndume. California courts recognize that the deprivation of property that is unique cannot be remedied with money damages. *See, e.g.*, *Kramer v. Puracyp, Inc.*, No. D070407, 2017 WL 1034474, at *4 (Cal. Ct. App. Mar. 17, 2017) (explaining that stock in closely held corporation was unique and had no established market value that could be used to calculate damages and therefore specific performance was appropriate remedy for defendant's failure to transfer stock); *LocusPoint Networks, LLC v. D.T.V. LLC*, No. 14-CV-01278-JSC, 2015 WL 5043261, at *19 (N.D. Cal. Aug. 26, 2015) (recognizing that television station was a unique asset and thus there was no adequate remedy at law for the failure to honor agreement to sell it); *Entercom Commc'ns Corp. v. Royce Int'l Broad. Corp.*, No. C041067, 2003 WL 21002873, at *5 (Cal. Ct. App. May 5, 2003) (radio station was unique item and therefore specific performance ordering its sale was appropriate); *Glynn v. Marquette*, 152 Cal. App. 3d 277, 280 (Ct. App. 1984) ("Specific performance is given in land sale

contracts because it is assumed every piece of property is unique and that the buyer's remedy by way of damages is inadequate."); *see also Brooks v. FCI Lender Servs., Inc.*, No. 2:16-cv-2598-KJM-KJN PS, 2017 WL 345527, at *6 (E.D. Cal. Jan. 23, 2017) ("[C]ourts have generally found damages to be inadequate only in cases where the services rendered pursuant to the contract at issue were 'peculiar, extraordinary, or unique' . . . ."); *KGM Harvesting Co. v. Fresh Network*, 36 Cal. App. 4th 376, 381 (1995) (recognizing that specific performance is available "where the goods are unique").

Ndume is self-evidently unique. He is a member of a critically endangered species. *See* Compl. ¶ 1; Answer ¶ 1 (admitting allegation). Ndume's relationship to CZBG is also unique, because he is a former resident of the Zoo and a relative of other gorillas currently living there. The parties' Agreement did not contract for the return of any gorilla; it established the eventual return of Ndume. And the parties did not contract for Ndume's return to any location—only that location selected by the Gorilla SSP and CZBG. There is ample precedent holding that animals like Ndume are unique assets, and thus, there is no adequate legal remedy for their deprivation. Specific performance is the only suitable redress. *See, e.g., Blue Skies Racing Stable, LLC v. O'Sullivan Farms*, LLC, No. 2012-CA-002116-MR, 2014 WL 3721160, at *7 (Ky. Ct. App. July 25, 2014) (recognizing that thoroughbred horse was "unique" and could not "simply be replaced like fungible property" and therefore specific performance was an appropriate remedy in enforcing a contract for the sale of the horse); *Valentine v. Berth*, No. CV 960071681, 1997 WL 282119, at *2 (Conn. Super. Ct. May 19, 1997) (ordering defendant to turn over selected puppy as provided in parties' agreement); *Harris v. Barcroft*, 543 P.2d 656, 657 (Or. 1975) (dog that was of championship caliber was unique chattel and would therefore be the proper subject of specific performance); *Morris v. Sparrow*, 287 S.W.2d 583, 585 (Ark. 1956) (holding that horse had a "peculiar and unique value" and therefore plaintiff had a right to the horse instead of its market value); *Elliott v. Jones*, 101 A.872, 873 (Del. Ch. 1917) (observing that horse with "unique or peculiar traits" had "unascertainable value, and, therefore, a contract respecting it is properly a subject for a decree for specific performance, because of the inadequacy of legal remedies"); *see also Martinez v. Robledo*, 210 Cal. App. 4th 384, 392 (2012) (recognizing that animals are a "unique" and "distinct and specially protected" kind of property and therefore "the usual standard of recovery for damaged personal property—market value—is inadequate"). Plainly, like the animals described in the cases above,

Ndume is one of a kind, and money damages simply cannot compensate for TGF's failure to return him to CZBG. *See Hoopa Valley Tribe v. Nat'l Marine Fisheries Serv.*, 230 F. Supp. 3d 1106, 1140 (N.D. Cal. 2017) ("There is no adequate remedy at law for the loss of or harm to endangered species."), *modified sub nom. Tribe v. U.S. Bureau of Reclamation*, No. 3:16-CV-04294-WHO, 2017 WL 6055456 (N.D. Cal. Mar. 24, 2017), *order clarified sub nom. Tribe v. Nat'l Marine Fisheries Serv.*, No. 16-CV-04294-WHO, 2018 WL 2010980 (N.D. Cal. Apr. 30, 2018).

Thus, each element clearly points to the fact that specific performance is warranted in these circumstances. TGF expressly and unambiguously agreed to transfer Ndume upon Koko's death. It is now denying CZBG its legal right to receive possession of Ndume. The only way to rectify this breach is by requiring TGF to honor its promise and return Ndume.

### C. The Undisputed Facts Admitted by TGF Establish CZBG Is Entitled to Summary Judgment on its Replevin Claim, Requiring Return of Ndume to CZBG.

CZBG is also entitled to summary judgment on its replevin claim. "Under California law, an action filed in replevin is an action to recover wrongfully seized property."[7] *Benedict v. Hewlett-Packard Co.*, No. 13–CV–00119–LHK, 2014 WL 234218, at *9 (N.D. Cal. Jan. 21, 2014). To prevail on a replevin claim, a plaintiff must establish: (1) title to the property; (2) right to possession at the time the action was filed; (3) defendant's actual possession of the plaintiff's property; (4) plaintiff's demand for possession of the property; and (5) defendant's refusal to deliver. *See Stockton Morris Plan Co. v. Mariposa County*, 99 Cal. App. 2d 210, 213 (1950) (citing 5 Cal. Jur. 185). There is no meaningful dispute that each of these elements is satisfied.

First, CZBG satisfies the first element, title to the property, because CZBG is the sole legal owner of Ndume. Compl. ¶ 62; *see id.* Ex. B (specifying that CZBG is the "owning institution"). This fact is undisputed: TGF admits that CZBG, not TGF, owns Ndume. *See* Answer ¶¶ 59 (admitting that

[7] Some district courts frame replevin as a remedy for a conversion claim. *See, e.g.*, *Brown v. Stroud*, No. 08-cv-2348 JSW, 2014 WL 1308342, at *20 (N.D. Cal. Mar. 31, 2014) (framing replevin as remedy for conversion); *Adler v. Taylor*, No. CV 04-8472-RGK, 2005 WL 4658511, at *3 (C.D. Cal. Feb. 2, 2005) (same). As explained in Section III, *infra*, CZBG is entitled to summary judgment on its conversion claim. Thus, whether as a remedy or an independent claim, CZBG is entitled to this relief.

TGF was never the "owning institution" of Ndume), 61 (admitting that TGF does not own Ndume), 62 (admitting that CZBG owns Ndume).

The second element, right to possession, also is indisputably satisfied. Under the express terms of the Agreement, upon the death of Koko, Ndume was to be transferred to an AZA institution selected by the GSSP and CZBG. Compl. ¶¶ 26, 60; Ex. B; *see* Answer ¶¶ 26, 60 (admitting relevant allegations). The GSSP and CZBG selected CZBG as the AZA institution, and informed Defendants of this selection by letter dated August 16, 2018. Compl. ¶ 30; *id.* Ex. C; *see* Answer ¶ 30 (admitting). As a result, CZBG was entitled to possess Ndume as of August 16, 2018 under the terms of the Agreement. Compl. ¶ 60. It follows that CZBG also had the right to possess Ndume at the time that it filed this action on October 25, 2018.

With respect to the third element, there is no dispute that TGF actually possesses Ndume. *See* Compl. ¶ 2, 42-43, 65; *id.* Exs. E, H (letters from Defendants objecting to transfer to CZBG); *see* Answer ¶¶ 38 (admitting to sending Ex. E), 42 (admitting to sending September 28, 2018 letter[8]). Similarly, with respect to the fourth and fifth elements, the undisputed evidence shows that CZBG demanded possession of Ndume by letters dated August 16, 2018 and September 24, 2018 and that Defendants refused these demands by letters dated September 18, 2018 and September 28, 2018. Compl. ¶¶ 30, 41; *id.* Exs. C, G; Answer ¶¶ 30, 38, 41, 42 (admitting sending and receipt of relevant letters).

As a result, the undisputed facts show that CZBG is entitled to summary judgment on its replevin claim and an order requiring the return of Ndume to CZBG. *See* Fed. R. Civ. P. 64 (stating that state law remedy of replevin is available in federal courts).

**D. The Undisputed Facts Dictate Summary Judgment on CZBG's Conversion Claim.**

Finally, CZBG is also entitled to summary judgment on its conversion claim. "The elements of a conversion claim are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3)

[8] The Answer misidentifies the September 28, 2018 letter from TGF as Exhibit E. *See* Answer ¶ 42. It is attached to the Complaint as Exhibit H.

damages." *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 601 (9th Cir. 2010). The basis of a conversion action "rests upon the unwarranted interference by defendant with the dominion over the property of the plaintiff." *Los Angeles Fed. Credit Union v. Madatyan*, 209 Cal. App. 4th 1383, 1387 (2012) (quoting *Burlesci v. Petersen*, 68 Cal. App. 4th 1062, 1066 (1998) (internal quotation marks omitted)). "The act must be knowingly or intentionally done, but a wrongful intent is not necessary." *In re Peklar*, 260 F.3d 1035, 1037 (9th Cir. 2001) (quoting *Taylor v. Forte Hotels Int'l*, 235 Cal. App.3d 1119, 1124 (1991) (internal quotation marks omitted)); *see also In re Emery*, 317 F.3d 1064, 1069 (9th Cir. 2003) (stating that in California, "[q]uestions of good faith, lack of knowledge, and motive are ordinarily immaterial" to a conversion claim).

With respect to the first element, as explained above, pursuant to the unambiguous terms of the Agreement, CZBG was entitled to possess Ndume as of August 16, 2018. *See supra* Section II. Thus, CZBG unequivocally had a right to possession of Ndume in September 2018 when TGF perpetrated the conversion by refusing to return Ndume.

Nor is there any question that the second element is satisfied. TGF has knowingly and intentionally interfered with CZBG's possession of Ndume by refusing to release him to Cincinnati.

Finally, as outlined above, CZBG has plainly suffered damages as a result of TGF's tortious conduct by being deprived of its contractual right to receive possession of Ndume. *See, e.g.*, *Joe Hand Promotions, Inc. v. Roseville Lodge No. 1293*, 161 F. Supp. 3d 910, 917 (E.D. Cal. 2016) (holding that the plaintiff had established the damages element of a conversion claim by presenting undisputed evidence that the defendant deprived the plaintiff of property that the plaintiff was rightfully entitled to receive).

## IV. CONCLUSION

For the foregoing reasons, CZBG respectfully requests that this Court grant its motion for summary judgment on its breach of contract (Count I), replevin (Count II), and conversion (Count III) claims and issue an order requiring the transfer of Ndume back to CZBG.

DATED: November 29, 2018 Respectfully submitted,

By: *s/ Simon J. Frankel*
Simon J. Frankel

Amy S. Heath
Covington & Burling LLP
One Front Street
San Francisco, CA 94111
(415) 591-6000
sfrankel@cov.com
aheath@cov.com

Aaron M. Herzig (*pro hac vice*)
Taft Stettinius & Hollister LLP
425 Walnut Street, Suite 1800
Cincinnati, Ohio 45202
(513) 381-2838

aherzig@taftlaw.com

*Attorneys for Plaintiff Cincinnati Zoo & Botanical Garden*

**VERIFICATION**

I, S. David Jenike, declare:

I am Chief Operating Officer at the Zoological Society of Cincinnati, d/b/a Cincinnati Zoo & Botanical Garden, the Plaintiff in this action, and I am authorized to make this verification on its behalf. I have read the foregoing Notice of Motion and Motion for Summary Judgment and know its contents. I have also read the Verified Complaint, ECF No. 1, and know its contents. The facts contained in this Notice of Motion and Motion for Summary Judgment, which are drawn from paragraphs 1-2, 5, 13-14, 16-19, 24-26, 29-31, 34-35, 38-39, 41-44, 60-62, and 65 of the Verified Complaint, are true as of my own personal knowledge.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

DATED: NOV 28, 2018

S. David Jenike