UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ZOOLOGICAL SOCIETY OF CINCINNATI,<br><br>Plaintiff,<br><br>v.<br><br>THE GORILLA FOUNDATION, et al.,<br><br>Defendants. | Case No. 18-cv-06529-RS<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## I. INTRODUCTION

In 1991 plaintiff Zoological Society of Cincinnati, d/b/a Cincinnati Zoo & Botanical Garden ("the Zoo") transferred Ndume, a western lowland Gorilla who had been living at the Zoo, to The Gorilla Foundation ("TGF"), in Northern California. TGF was founded by defendant Dr. Francine Patterson, who as a Stanford graduate student in the early 1970s began working with a young female gorilla named Koko at the San Francisco Zoo to teach her sign language. Koko eventually moved to a location on the Stanford campus, and later to a location in Woodside, where she lived under TGF's care until her death in June of 2018.

At the time Ndume was transferred, TGF had custody of two gorillas, Koko and a male named Michael, who apparently had developed a sibling-like relationship. As set out in the original written agreement between the Zoo and TGF, Ndume was sent to TGF in hopes that he and Koko would mate and produce offspring. That never happened. Michael died in 2000.

On December 31, 2015, just over three years ago, the Zoo and TGF entered into a new

written agreement, which expressly superseded any prior agreements ("the 2015 Agreement"). The 2015 Agreement provides, among other things, that upon the death of Koko, Ndume is to be placed at an institution accredited by the Association of Zoos and Aquariums ("AZA"). The Zoo and an organization known as the Gorilla Species Survival Plan ("GSSP")[1] are jointly to recommend the specific institution.

TGF is not an AZA accredited institution, and there is no indication it ever intended to seek such accreditation. As such, the 2015 Agreement necessarily contemplated that Ndume would be moved from TGF if he survived Koko. After Koko's death last year, the Zoo and GSSP determined that Ndume should be transferred back to the Zoo. TGF has not permitted arrangements for a transfer to be carried out. By this suit, the Zoo seeks specific enforcement of the 2015 agreement, and contends it is entitled to summary judgment in its favor. The motion will be granted.

## II. LEGAL STANDARD

Summary judgment is proper "if the pleadings and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The purpose of summary judgment "is to isolate and dispose of factually unsupported claims or defenses." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the

---

[1] The GSSP is composed of wildlife professionals with five primary goals: (a) ensuring the genetic and demographic health of the captive population; (b) advancing the care of captive gorillas; (c) engaging in research to help learn more about gorillas and their care; (d) educating the public about critical gorilla issues; and (e) partnering with other organizations that seek to improve the lives of wild and captive gorillas. The GSSP Management Group is made up of gorilla-care experts elected by their peers to oversee and plan for the management of the North American gorilla population under human care. The 15 members of the GSSP Management Group have a combined 325 years of experience with gorillas, in areas including caretaking, training, enrichment, research, nutrition, and veterinary medicine.

pleadings and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323 (citations and internal quotation marks omitted). If it meets this burden, the moving party is then entitled to judgment as a matter of law when the non-moving party fails to make a sufficient showing on an essential element of the case with respect to which he bears the burden of proof at trial. *Id*. at 322-23. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The non-moving party cannot defeat the moving party's properly supported motion for summary judgment simply by alleging some factual dispute between the parties.

To preclude the entry of summary judgment, the non-moving party must bring forth material facts, *i.e.*, "facts that might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 588 (1986). The court must draw all reasonable inferences in favor of the non-moving party, including questions of credibility and of the weight to be accorded particular evidence. *Masson v. New Yorker Magazine*, Inc., 501 U.S. 496 (1991) (citing Anderson, 477 U.S. at 255); *Matsushita*, 475 U.S. at 588 (1986). It is the court's responsibility "to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." *T.W. Elec. Service v. Pacific Elec. Contractors*, 809 F.2d 626, 631 (9th Cir. 1987). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

III. DISCUSSION

TGF does not dispute that if the 2015 Agreement is enforceable, Ndume must now be transferred to the Zoo.[2] In opposition to the Zoo's motion, TGF instead relies on the assertions of its affirmative defenses that the agreement is void as illegal, or that performance is excused as impractical, or both.[3] Neither defense is tenable.

*Illegality*

TGF begins with California Civil Code §1441, which provides:

> IMPOSSIBLE OR UNLAWFUL CONDITIONS VOID. A condition in a contract, the fulfillment of which is impossible or unlawful, within the meaning of the Article on the Object of Contracts, or which is repugnant to the nature of the interest created by the contract, is void.

TGF then cites California Civil Code §1667 for the definition of unlawfulness:

> That is not lawful which is:
> 1. Contrary to an express provision of law;
> 2. Contrary to the policy of express law, though not expressly prohibited; or,
> 3. Otherwise contrary to good morals.

---

[2] Specific performance is not an independent claim for relief—it is an equitable remedy for a breach of contract. *See Amiri v. Bay Harbour Care Home*, 2017 WL 5972589, at *5 (N.D. Cal. Dec. 1, 2017). It is available, in the court's discretion, where the plaintiff proves (1) a contract sufficiently definite and certain in its terms to be enforced, (2) that the contract was just and reasonable, (3) that the plaintiff has performed his or her side of the bargain, (4) that the promisor has failed to perform, (5) that the contract was supported by adequate consideration, and (6) the remedy at law is inadequate. *Porporato v. Devincenzi*, 261 Cal. App. 2d 670, 675 (1968).

[3] TGF acknowledges that the Zoo was not obliged to negate the affirmative defenses in its moving papers. In post-reply objections, however, TGF faults the Zoo for including declarations with its reply brief addressing those defenses. The Zoo properly responded to TGF's opposition by addressing the defenses on reply. The Zoo's request to file a response to TGF's post-reply objections to make that point, although not necessary, is granted, and the proposed response, Dkt. No. 44-2, is deemed filed. TGF's request for leave to file a sur-reply to address the reply declarations is denied. The analysis and conclusion of this order does not turn on any factual content of the reply declarations.

Because harming animals, particularly members of endangered species, is unquestionably against public policy under Federal Law, California law, and even the law of Ohio (where Ndume is to be transferred), and because it contends the transfer will harm Ndume, TGF insists the 2015 Agreement is illegal and unenforceable.

TGF identifies a number of potential risks Ndume allegedly will face from being transported to the Zoo and/or after arriving there and needing to adapt to a new environment and the loss of his familiar surroundings and human caretakers. TGF focuses primarily on the fact that Ndume carries a Balantidium Coli infection, which apparently is chronic, but essentially dormant. TGF offers evidence that stress could trigger an outbreak of the infection, which would potentially be fatal. Two persons with expertise in gorillas and a gastroenterologist who has previously treated gorillas at TGF and the San Francisco Zoo offer declarations that the move and the conditions at the Zoo can be expected to have a negative effect on Ndume, including possibly his death. The Zoo, in turn, offers contrary expert opinion and challenges the foundation of the opinions offered by TGF.

The conflict in the opinions offered do not give rise to a triable issue of fact as to the legality of the 2015 agreement. At most, TGF has shown that transferring Ndume will present certain risks of harm, which obviously must be mitigated to the extent possible. This is not a case, however, where compliance with some contractual provision unquestionably will harm an animal, such that it rises to the level of illegality.

Significantly, it is undisputed that TGF signed the 2015 agreement less than 3 years before the present dispute arose. At that time, TGF already knew of Ndume's Balantidium Coli infection. It already understood that if Koko—who was ten years older than Ndume—did not survive him, Ndume would be transferred away from TGF upon her death. All of the circumstances TGF contend now make compliance with the agreement risky existed when the Zoo, TGF, and GSSP negotiated it. TGF's claim that those circumstances render the agreement illegal is not persuasive.

*Impracticability*

TGF also relies on the common law defense in California that:

> A thing is impossible in legal contemplation when it is not practicable; and a thing is impracticable when it can only be done at an excessive and unreasonable cost.

*City of Vernon v. City of Los Angeles*, 45 Cal. 2d 710, 720(1955) (citation omitted). TGF relies on the same arguments it advances as to the purported illegality of the 2015 Agreement to contend performance would come at an excessive and unreasonable (non-monetary) cost. Again, however, TGF's position is fatally undermined by the fact it made the agreement only three years ago, with full knowledge of the facts it now insists might give rise to unreasonable costs. As TGF does not otherwise offer any grounds to show it is not in breach of the agreement, or that specific performance is unavailable or unwarranted in these circumstances, the Zoo's motion will be granted.

TGF's request for a continuance under Rule 56(d) to permit it to take discovery is denied. Although the Zoo's motion was filed at the outset of the case, there is no reasonable basis to believe the discovery TGF proposes would uncover evidence creating a triable issue of fact. TGF primarily seeks further information regarding the Zoo's plans and procedures for transporting Ndume and for how he will be housed and integrated after the transfer—i.e., information that might ameliorate TGF's concerns and fears. This order, however, is not based on any specific assurances from the Zoo about its plans, but on TGF's failure to show that the risks it identifies render the 2015 Agreement legally unenforceable.

All that said, specific performance remains an equitable remedy, such that it is appropriate to impose certain conditions on the decree to be awarded here. While a court may not rewrite a contract under the guise of ordering specific performance, the performance required "need not be identical with that promised in the contract; it may be so drawn as best to effectuate the purposes for which the contract was made, and it may be granted on such terms and conditions as justice requires." *Rogers v. Davis*, 28 Cal.App.4th 1215, 34 Cal.Rptr.2d 716, 720 (1994) (quoting

Restatement (First) of Contracts, § 359(2)).

Accordingly, the parties are directed to meet and confer to attempt to reach a consensus on as many aspects of the protocol for transporting Ndume to the Zoo as possible, and as to the conditions under which Ndume will be kept at the Zoo and acclimated to those conditions. The Zoo is directed to exercise the utmost good faith in entertaining any suggestions or requests made by TGF, without regard to the fact that it may believe the protocols and plans it has already adopted are sufficient. TGF, in turn, is to exercise the utmost good faith in presenting any suggestions or requests, and is directed to bear in mind that the question of *whether* Ndume will be transferred to the Zoo is no longer subject to negotiation.

The parties shall notify the court if they reach an agreement, andthe Zoo shall promptly dismiss this action thereafter. If within 30 days of the date of this order the parties have been unable to reach consensus, they shall file a joint statement setting out any issues on which they have reached an impasse.[4]

## IV. CONCLUSION

Both sides recognize that Ndume is not ordinary chattel. While the law recognizes that gorillas in captivity may be owned, neither the 2015 Agreement nor this order treats Ndume merely as property to be dealt according to the desires of the Zoo.[5] Rather, the Zoo, GSSP, and TGF crafted the agreement to provide that Ndume's fate, if he survived Koko, would be decided in

---

[4] People for the Ethical Treatment of Animals, Inc. ("PETA") was given leave to file an amicus brief, without prejudice to a subsequent determination as to the weight it would be given. The PETA brief primarily attempts to show that gorillas generally do best in socialization with other gorillas and that there allegedly have been various other deficiencies in TGF facilities and practices over the years, such that Ndume's continued residence at TGF is harmful, and potentially even illegal. The point about gorilla socialization was adequately established by the Zoo. PETA's arguments as to the conditions at TGF do not present undisputed facts relevant to the issues to be decided in this motion. Accordingly, the PETA brief has not been relied upon in reaching this decision.

[5] This order does not reach the Zoo's common law property theories for relief.

CASE NO. 18-cv-06529-RS
7

a manner consistent with GSSP principles. There is no legal basis to negate that agreement now. Given that both sides represent that the well-being of Ndume is their paramount interest, however, they are expected to cooperate now to ensure the conditions under which he is transported to the Zoo and begins living there are as optimal as can reasonably be achieved.

**IT IS SO ORDERED**.

Dated: February 1, 2019

_____
RICHARD SEEBORG
United States District Judge